UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HERMAN CRUZ,

                              Plaintiff,
                                                            9:13-CV-30
v.                                                           (FJS/TWD)

M. GROSSO,

                              Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

HERMAN CRUZ, 86-C-0468
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953


HON. ERIC T. SCHNEIDERMAN            CHARLES J. QUAKENBUSH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT-RECOMMENDATION AND ORDER**

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Herman Cruz alleges that Defendant M. Grosso retaliated against him for engaging in protected conduct. (Dkt. No. 1.) Currently pending before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt.

No. 13.) For the reasons that follow, I recommend that Defendant's motion be denied but that the Court sua sponte dismiss two claims with leave to amend.

I.   BACKGROUND

The following facts are derived from the face of the Complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the time of all relevant events alleged in the Complaint, Plaintiff was engaged in a separate prisoner civil rights case pending before the Honorable Glenn T. Suddaby against several Upstate Correctional Facility officials. (Dkt. No. 1 at 3-4, 6.[1]) Upon arrival at Auburn Correctional Facility on November 9, 2012, Plaintiff requested placement in protective custody because of the pending case and was instead transferred to the Mental Health Unit ("M.H.U."). *Id.* at 5. The next evening around 8 p.m. he was assaulted by two unknown staff members and left unconscious on the floor. *Id.*

On November 13, 2012, Plaintiff spoke with Defendant Grosso regarding his assault and she advised him to "lay low." *Id.* On November 14, 2012, Defendant and a non-defendant sergeant spoke with Plaintiff about why protection was denied. *Id.* at 6. Plaintiff informed them that he had a prisoner civil rights case pending before the Court. *Id.* Defendant Grosso "stated that she couldn't go against Upstate Administration. But that she could always falsify a Misbehavior Report and put me back in [the special housing unit ("S.H.U.")]." *Id.* Plaintiff provided the names of his "enemies" to Defendant but she instructed the non-defendant sergeant to put in a request for protection with no names, stating Plaintiff refused to provide names. *Id.*

---

[1]   Page numbers in citations to the Complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

Plaintiff remained in M.H.U. "with loss of all privileges for no reason til the 19th." *Id.* at 7. He was then taken to S.H.U. on November 20, 2012, and presented with a misbehavior report written by Defendant that stated Plaintiff "would kill her." *Id.*

A disciplinary hearing was held based on Defendant's misbehavior report. *Id.* During the hearing, M.H.U. Chief C. Mayer indirectly confirmed that Defendant Grosso falsified a misbehavior report to have Plaintiff put in S.H.U. *Id.*

Plaintiff claims that now Defendant "is having staff create problems so that I could receive more Misbehavior Reports" to stay in S.H.U. *Id.* Plaintiff claims Defendant has directed staff to distribute his personal mail to other prisoners. *Id.* He is also being refused legal pads and medical care. *Id.* On December 27, 2012, Defendant walked by Plaintiff's S.H.U. cell without any other reason than to harass him and stated "who do you think they will believe?" and walked away laughing. *Id.* at 13.

Plaintiff filed the Complaint on January 9, 2013. (Dkt. No. 1.) Plaintiff asserts Defendant has violated his First, Eighth, and Fourteenth Amendment rights, and seeks injunctive relief, as well as actual, nominal, and punitive damages. *Id.* at 10. On March 22, 2013, Judge Scullin issued a Memorandum-Decision and Order granting Plaintiff's *in forma pauperis* application, dismissing with prejudice Plaintiff's stand-alone claims regarding false misbehavior reports, and dismissing without prejudice Plaintiff's Eighth Amendment failure-to-protect claim, Eighth Amendment conditions-of-confinement claim, and Fourteenth Amendment due process claim. (Dkt. No. 8.) Judge Scullin ordered that Defendant Grosso file a response to Plaintiff's First Amendment retaliation claims. *Id.* Plaintiff failed to file an amended complaint with respect to the claims dismissed without prejudice. Defendant now moves to dismiss the

retaliation claims. (Dkt. No. 13.) Plaintiff has opposed the motion. (Dkt. No. 15.) For the reasons that follow, I recommend that Defendant's motion be denied.

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Plaintiff claims Defendant retaliated against him for engaging in protected conduct by refusing protective custody and falsifying a misbehavior report, resulting in his wrongful transfer to S.H.U. Plaintiff further asserts that Defendant directed staff to "create problems" for him so that he received more misbehavior reports to remain in S.H.U. Finally, Plaintiff claims Defendant has directed staff to distribute his personal mail to other prisoners, and he is being refused legal pads and proper medical care. (Dkt. No. 1.) Defendant argues Plaintiff's allegations are insufficient to state a claim of retaliation and therefore must be dismissed. (Dkt. No. 13.) For the reasons that follow, I recommend that the Court deny Defendant's motion to dismiss.

### A. Legal Standard for a Retaliation Claim

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

> [t]his is true for several reasons. First, claims of retaliation are difficult

> to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendant took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

### B. Initial Refusal to Grant Protective Custody

Plaintiff claims that Defendant retaliated against him for exercising the protected conduct of filing a lawsuit against a prison official by refusing to grant Plaintiff protective custody. (Dkt. No. 1 at 6.) Defendant argues that this claim should be dismissed because Plaintiff fails to allege facts that suggest a causal connection between Plaintiff's protected conduct and the adverse action. (Dkt. No. 13-1 at 6.) For the following reasons, I find that Plaintiff has alleged facts plausibly suggesting a retaliation claim, and therefore I recommend that the Court not dismiss this claim.

The Complaint alleges facts plausibly suggesting that Plaintiff was engaged in protected conduct. "Prisoners . . . have a constitutional right of access to the courts and to petition the government for the redress of grievances." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); *Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995). Here, Plaintiff was engaged in a pending legal action before the Court against Upstate prison officials (Dkt. No. 1 at 4.) Plaintiff divulged this information to Defendant when he requested protective custody. (Dkt. No. 1 at 6.) Defendant concedes that Plaintiff's "commencement of that lawsuit was a 'protected' activity for the purposes of the First Amendment." (Dkt. No. 13-1 at 6.)

The Complaint alleges facts plausibly suggesting that Defendant took adverse action against Plaintiff. The Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id*. Defendant argues that the Complaint does not allege facts plausibly suggesting adverse action because "it is clear that plaintiff can claim no arguable interest in a transfer into [protective custody] of any other particular type of housing." (Dkt. No. 13-1 at 7, citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Klos v. Haskwell*, 835 F. Supp. 710, 723 (WDNY 1993), *aff'd* 48 F.3d 81 (2nd Cir. 1995).) What distinguishes the case at hand from those cited by Defendant is that *Olim, Montanye*, and *Klos* all refer to cases where prisoners claimed a liberty right in their prison

institution assignment (not the claim here), and none of those cases involved allegations of retaliation (a significant claim here).  Plaintiff's Complaint does not assert a right to specific placement.  Rather, Plaintiff alleges that Defendant's denial of protective custody, or even the denial of the submission of an accurate protective custody application, was an adverse action taken by Defendant and motivated by retaliation.

Plaintiff identified his "enemies" to Defendant, explaining his fear of retaliation for an incident he incited at Upstate Correctional Facility, which was the basis of his federal suit, but "defendant Grosso had the sergeant put in a Request for Protection with no names stating [Plaintiff] refuse[d] to provide names."  (Dkt. No. 1 at 6.)  The Second Circuit has previously evaluated a prison official's refusal to grant protective custody as an act of retaliation in furtherance of a "campaign of harassment" against an inmate, and found that an official's direct actions play an intricate role in whether the refusal is retaliation.  *Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003).  The Second Circuit has previously found that fear is a key aspect in whether an inmate has suffered adverse action, specifically when fear is used as a means to stifle a prisoner's ability or desire to file lawsuits or grievances.  *See Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002) (reversing the dismissal of a complaint alleging that the transfer of prisoner to a psychiatric facility was an adverse action taken in retaliation for filing a grievance).  Thus, here, the Complaint sufficiently pleads that refusal of protective custody or even the ability to seek protective custody by Defendant was an "adverse action" taken against Plaintiff because he feared for his safety.  (Dkt. No. 1 at 13.)

Defendant argues Plaintiff has failed to allege facts plausibly suggesting a causal connection between the protected conduct and the adverse action.  (Dkt. No. 31-1 at 6-7.)

8

Defendant is incorrect. In order to meet the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Id*. Those factors include the temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73).[2]

Plaintiff alleges facts sufficient to establish the temporal proximity factor of the causal connection prong. The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)). Here, Plaintiff alleges that he informed Defendant about his pending lawsuit on November 14, 2012, and she refused him protective custody on the same day. (Dkt. No. 1 at 5-6.) This passage of less than a day supports an inference of a causal connection.

Plaintiff further alleges that Defendant stated that she would not grant him protective custody because she "can't go against Upstate Administration." (Dkt. No. 1 at 6.) This statement plausibly suggests a reason for the refusal of protective custody related to retaliation, and therefore, Plaintiff meets the burden of the causation prong. As such, I recommend that the Court not dismiss this claim.

---

[2] Other factors discussed in *Baskerville* and *Colon* are applicable only when the alleged adverse action is the issuance of a misbehavior report.

### C. Wrongful Transfer

Plaintiff claims that Defendant retaliated against him for accessing the courts by ordering that he be wrongfully held in M.H.U. with loss of all privileges "for no reason" until September 19, 2012, then having him transferred to S.H.U., still without providing a reason. (Dkt. No. 1 at 7.) Defendant argues this claim should be dismissed because Plaintiff does not provide facts sufficient to suggest a causal connection between Plaintiff's revelation of the pending action to Defendant and Defendant's subsequent conduct. (Dkt. No. 13-1 at 6.) For the following reasons, I find that Plaintiff has presented a plausible retaliation claim for wrongful transfer and recommend that the motion to dismiss this claim be denied.

As discussed above, Defendant concedes that Plaintiff has alleged facts plausibly suggesting that he was engaged in protected conduct when he filed a lawsuit against separate prison officials. (Dkt. No. 13-1 at 6-7.)

For the purposes of this motion, Plaintiff has alleged facts plausibly suggesting that Defendant took adverse action against him by transferring him to the M.H.U. and the S.H.U. The District Court for the Southern District has found that intra-facility transfers can be considered adverse action for the purposes of a retaliation claim. *Soto v. Iacavino*, No. 01 Civ. 5850 (JSM), 2003 U.S. Dist. LEXIS 9213, at *4-5, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003). However, the transfer of a prisoner is not considered an "adverse action" unless it results in the prisoner being subjected to more onerous conditions. *See Coleman v. Sutton,* 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (prisoner failed to state a retaliation claim where he did not allege that conditions into which he was transferred were more onerous than his original placement); *compare Shine v. Hofman*, 548 F. Supp. 2d 112 (D. Vt. 2008) (transfer from general population

to "close custody"). Here, Plaintiff was transferred to the S.H.U., where Plaintiff states he does not receive proper medical treatment, he is being denied legal pads, and his mail is being delivered to others. These differences alone are enough to suggest transfer was an "adverse action" resulting in more onerous conditions than the general population, apart from the confined living conditions of S.H.U.

Defendant argues this claim should be dismissed because Plaintiff does not provide facts sufficient to suggest a causal connection between Plaintiff's revelation of the pending action to Defendant and Defendant's subsequent conduct. (Dkt. No. 13-1 at 6.) Defendant is incorrect. Plaintiff presents the temporal proximity factor of the causal connection requirement, as well as alleges a statement by the Defendant that suggests a causal connection. Plaintiff alleges that he informed Defendant about his pending lawsuit on November 14, 2012, and she refused him protective custody on the same day. (Dkt. No. 1 at 5-6.) On November 15, 2012, Defendant refused to speak with Plaintiff. *Id.* at 6. Plaintiff remained in the M.H.U. until he was transferred to the S.H.U. on November 20, 2012. *Id.* at 7. This passage of less than a week supports an argument of temporal proximity and an inference of casual connection. The Complaint alleges that Defendant Grosso stated she would not grant him protective custody because she "can't go against Upstate Administration." (Dkt. No. 1 at 6.) This statement plausibly suggests a reason for the refusal of protective custody related to retaliation, and thus, Plaintiff meets the burden of the causation prong. Therefore, I recommend that the Court not dismiss this claim.

        D.        **Filing a False Misbehavior Report**

Plaintiff argues that Defendant retaliated against him for exercising the protected conduct

of filing a lawsuit against a prison official by filing a false misbehavior report.[3] Defendant argues this claim should be dismissed because Plaintiff does not provide facts sufficient to suggest a causal connection between Plaintiff's revelation of the pending action to Defendant and Defendant's subsequent conduct. (Dkt. No. 13-1 at 6.) Defendant is incorrect.

In the retaliation context, "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right . . . states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 681 (2d Cir. 2002) (citations omitted).

As discussed above, Defendant concedes that Plaintiff has alleged facts plausibly suggesting that he was engaged in protected conduct when he filed a lawsuit. (Dkt. No. 13-1 at

---

[3] In Judge Scullin's Memorandum-Decision and Order, he dismissed the stand-alone claim of filing a false misbehavior report with prejudice, stating: "it is well-settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.'" (Dkt. No. 8 at 9-10, *citing Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, in his decision, he acknowledged that "[t]he only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.'" (Dkt. No. 8 at 9-10, *citing Boddie*, 105 F.3d at 862 (citation omitted)). Liberally construed, the Court interprets that Plaintiff has asserted a retaliation claim related to the filing of a false misbehavior report, and will analyze it under the legal standard for a retaliation claim.

6-7.) Also, discussed above, S.H.U. placement is an adverse action. Plaintiff contends that his continued stay in S.H.U. is the result of Defendant's false misbehavior report, and therefore, Defendant's action in writing the report was an adverse action against Plaintiff. (Dkt. No. 1 at 7.)

Plaintiff provides facts sufficient to suggest that Defendant Grosso's decision to discipline Plaintiff was substantially motivated by the protected conduct. Plaintiff states that at the hearing, non-defendant Mental Health Unit Chief C. Mayer "indirectly stated that Grosso would falsify a misbehavior report to put me in SHU." (Dkt. No. 1 at 7.) The Complaint also alleges that Defendant Grosso stated she would not grant him protective custody because she "can't go against Upstate Administration." (Dkt. No. 1 at 6.) These statements plausibly suggests a reason for the discipline related to retaliation, and therefore, Plaintiff has alleged facts plausibly suggesting a causal connection. Accordingly, I recommend that the Court not dismiss this claim.

E. **Additional Misbehavior Reports at the Direction of Defendant Grosso**

Plaintiff claims that Defendant retaliated against him for filing grievances against her by instructing staff to "create problems so that [he] could receive more Misbehavior Reports" so he would remain in S.H.U. (Dkt. No. 1 at 8.) Defendant does not address this claim. For the reasons that follow, I recommend that this claim survive initial review pursuant to 28 U.S.C. § 1915.

As previously discussed, filing a grievance against prison officials for wrongful treatment is constitutionally protected conduct. *Scott,* 344 F.3d at 288. Here, Plaintiff states in the Complaint that he filed numerous grievances regarding Defendant's refusal to grant protective custody and wrongful transfer to S.H.U.. (Dkt. No. 1 at 2.) Therefore, he was engaged in

13

protected conduct. Plaintiff claims Defendant is encouraging staff to "create problems so that [he] could receive more Misbehavior Reports." (Dkt. No. 1 at 8.) Accepted as true, Defendant's actions are "adverse" because the result is Plaintiff's continued housing in S.H.U. Finally, Plaintiff contends there is a causal connection between his exercise of protected conduct and the adverse action beyond temporal proximity. As he suggests, Defendant Grosso's own self-interest is a motivating factor as evidenced by her statement "who do you think they will believe?" (Dkt. No. 1 at 13.) Therefore, I recommend that Defendant be directed to respond to this claim.

### F. Continued Refusal of Protective Custody

Plaintiff claims that Defendant retaliated against him for exercising the protected conduct of filing grievances against her by continuing to refuse to grant Plaintiff protective custody. (Dkt. No. 1 at 7.) Defendant argues this claim should be dismissed because Plaintiff fails to allege facts that suggest a causal connection between Plaintiff's protected conduct and the adverse action. (Dkt. No. 13-1 at 5.) Defendant is incorrect.

Under this claim, Plaintiff was engaged in the constitutionally protected conduct of filing grievances against Defendant. Defendant's continued refusal of protective custody was an adverse action against Plaintiff because it has put him in fear for his life. The Second Circuit has previously found that fear is a key aspect in whether an inmate has suffered adverse action, specifically when fear is used as a means to stifle a prisoner's ability or desire to file lawsuits or grievances. *See Morales*, 278 F.3d at 131-32 (reversing the dismissal of a complaint alleging that the transfer of prisoner to a psychiatric facility was an adverse action taken in retaliation for filing a grievance). Plaintiff has presented facts, including statements by Defendant, sufficient to establish more than a temporal connection between the protected conduct and the retaliatory

conduct. It is plausible that Defendant, as the object of Plaintiff's grievances, was motivated by self-interest to act against Plaintiff. Therefore, I recommend that the Court not dismiss this claim.

### G. Redistribution of Plaintiff's Mail at the Direction of Defendant Grosso

Plaintiff claims that Defendant retaliated against him for filing grievances against her by instructing C.O. Brown to distribute Plaintiff's mail to other inmates, and now C.O. Brown is "giving my mail, mags, etc. etc. away to other inmates." (Dkt. No. 1 at 12.) Defendant does not address this claim. For the reasons that follow, I recommend that this claim survive initial review pursuant to 28 U.S.C. § 1915.

Again, Plaintiff's filing of grievances against Defendant is constitutionally protected. Denial to prisoners of their legal mail has been protected by the courts. *See Heimerle v. Attorney Gen.*, 753 F.2d 10, 12-13 (2d Cir. 1985). Here, Plaintiff does not specifically claim he is being denied legal mail, but just "mail, mags, etc. etc." (Dkt. No. 1 at 12.) The Second Circuit has recognized that there can be reasonable causes related to the prison system for refusing a prisoner mail based on a substantial governmental interest. *See Heimerle*, 753 F.2d at 12-13. However, here, Plaintiff alleges facts plausibly suggesting temporal proximity and a causal connection between his protected conduct and the redistribution of his mail. Plaintiff alleges that he informed Defendant about his pending lawsuit on November 14, 2012, and she refused him protective custody on the same day. (Dkt. No. 1 at 5-6.) Plaintiff remained in the M.H.U. until he was transferred to the S.H.U. on November 20, 2012. *Id.* at 7. Shortly thereafter, Plaintiff began filing grievances against Defendant regarding denial of protective custody, wrongful transfer, and a false misbehavior report. *Id.* at 2. At some point before December 31, 2012,

15

Defendant instructed C.O. Brown to redistribute Plaintiff's mail. Plaintiff states "on 12-31-12 at around 9:00 AM Ms. W (Refuses to provide name[4]) stated You keep having Grievances filed against Ms G. (the defendant Grosso goes by Ms. G) And you gonna have a lot more problems then your mail." (Dkt. No. 1 at 12.) This passage of just over a month supports an argument of temporal proximity and an inference of causal connection. Therefore I recommend that Defendant be directed to respond to this claim.

### H. Denial of Legal Pads

Plaintiff claims "I am being denied legal writing pads, stating that providing me with legal writing paper is a security problem." *Id.* at 13. Defendant does not address this claim. For the reasons that follow, I recommend that the Court dismiss this claim sua sponte with leave to amend.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Here, Plaintiff neither alleges that denial of legal pads is based on the actions or at the direction of Defendant, nor suggests that she knew about the denial. He only states "I am being denied legal writing pads, stating that providing me with legal writing paper is a security problem." Dkt. No. 1 at 13. Therefore, I recommend that the Court

---

[4] In Plaintiff's Response to the Motion to Dismiss, Plaintiff identifies this woman as Mental Health counselor Kara Walender. (Dkt. No. 15 at 8.)

dismiss this claim sua sponte with leave to amend.

I. **Denial of Medical Care**

Plaintiff claims that "I still [complained] to medical about pain in my back from the assault and that is being denied by a nurse stating nothing is wrong with me to support M Grosso." (Dkt. No. 1 at 12.) Defendant does not address this claim. For the reasons that follow, I recommend that the Court dismiss this claim sua sponte with leave to amend.

As discussed above, under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright,* 21 F.3d at 501 (internal citations omitted). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass,* 790 F.2d at 263.

Here, Plaintiff fails to allege that Defendant took adverse action against Plaintiff related to medical care. Rather, he merely asserts that medical staff are supporting Defendant Grosso by refusing him proper care. Unlike Plaintiff's allegations regarding misbehavior reports and mail, Plaintiff does not allege that Defendant Grosso instructed staff to deny him medical care, therefore he has not alleged personal involvement of Defendant in this claim. As such, I recommend that the Court dismiss this claim sua sponte with leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED** that the Court **DISMISS** the claims of retaliation through denial of legal pads and denial of medical care**,** sua sponte, with leave to amend; and it is further

17

**RECOMMENDED** that Defendant be directed to answer the remainder of the Complaint; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Soto v. Iacavino*, No. 01 Civ. 5850 (JSM), 2003 U.S. Dist. LEXIS 9213, 2003 WL 21281762 (S.D.N.Y. June 4, 2003).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: March 5, 2014
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge