UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HERMAN CRUZ,

                                    Plaintiff,

                                                        9:13-CV-0030
v.                                                      (FJS/TWD)

M. GROSSO,

                                    Defendant.

_____

APPEARANCES:                                OF COUNSEL:

HERMAN CRUZ, 86-C-0468
Plaintiff *pro se*
Sullivan Correctional Facility
Box 116
Fallsburg, New York 12733

HON. ERIC T. SCHNEIDERMAN                    KEVIN M. HAYDEN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendant
Syracuse Regional Office
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2465

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me by the Honorable Frederick J. Scullin, Senior United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently pending before the Court is

Defendant's motion pursuant to Federal Rule of Civil Procedure 37(d) to dismiss the complaint

as a sanction for Plaintiff's failure to submit to a deposition, or, alternatively, to dismiss the

complaint as a sanction pursuant to Federal Rule of Civil Procedure 11 for making a sworn

material misrepresentation to the Court.  (Dkt. No. 113.)  Plaintiff has made no official response to the motion, but has sent the Court several letters and motions.  (Dkt. Nos. 116, 117, 119, 120.) For the reasons that follow, I recommend that the complaint be dismissed.

## I.     BACKGROUND

In this action, Plaintiff Herman Cruz claims that Defendant M. Grosso failed to protect him, filed a false misbehavior report, made him subject to unconstitutional conditions of confinement, violated his right to due process, and unlawfully retaliated against him.  (Dkt. No. 1.)

In the complaint, Plaintiff only reported filing one previous lawsuit in any state or federal court relating to his imprisonment.  (Dkt. No. 1 at 3-4.)  However, Plaintiff in fact filed at least eight additional actions and one petition seeking a writ of habeas corpus before filing this action. *See Cruz v. Traynor,* No. 12-CV-1454 (N.D.N.Y. filed Sept. 21, 2012) (dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915(A)(b)); *Cruz v. Tichenor*, No. 08-CV-0591 (N.D.N.Y. filed June 5, 2008) (dismissed for failure to prosecute); *Cruz v. Lashway*, No. 06-CV-0867 (N.D.N.Y. filed July 17, 2006) (dismissed on summary judgment); *Cruz v. Church*, No. 05-CV-1067 (N.D.N.Y. filed Aug. 25, 2005) (no-cause jury verdict); *Cruz v. Thompson*, No. 04-CV-1497 (N.D.N.Y. filed Dec. 29, 2004) (voluntarily dismissed); *Cruz v. Hillman*, No. 01-CV-4169 (S.D.N.Y. filed May 17, 2001) (settled); *Cruz v. Wead*, No. 97-CV-0846 (W.D.N.Y. filed Oct. 23, 1997) (dismissed on summary judgment); *Cruz v. Senkowski*, No. 90-CV-0289 (W.D.N.Y. filing date not available electronically) (petition for writ of habeas corpus dismissed for failure to prosecute).   Plaintiff has under-reported his litigation history in at least two previous actions. In *Cruz v. Zwart*, filed after this case, and *Cruz v. Traynor*, Plaintiff reported filing only *Cruz v.*

*Church.*

On March 22, 2013, the Court issued an Order granting Plaintiff's *in forma pauperis* ("IFP") application, but dismissed all claims against Defendant except for the retaliation claim. (Dkt. No. 8 at 16-17.) On June 4, 2014, the Court issued a Mandatory Pretrial Discovery and Scheduling Order. (Dkt. No. 59.) In that Order, the Court granted Defendant leave to take Plaintiff's deposition. *Id*. at 4-5. The Order stated that:

> Defense counsel shall provide plaintiff[] with notice of the date of the deposition in the form provided in Rule 30(b)(1) and such notice shall be deemed sufficient if the notice is mailed to plaintiff[] at least fifteen (15) days prior to the scheduled date for the deposition. The deposition may not commence until at least fifteen (15) days after defense counsel has filed a notice of compliance with [mandatory discovery].

*Id.*

The Order also stated that:

> disagreement with any directive of security staff at the correctional facility at which the deposition is scheduled is not a ground on which plaintiff(s) may refuse to answer appropriate questions. The failure of the plaintiff(s) to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to Fed. R. Civ. P. 37.

(Dkt. No. 59 at 5.)

On August 12, 2014, defense counsel advised the Court that "Defendant Grosso . . . served Rule 26 disclosures on today's date." (Dkt. No. 67 ¶ 6.) On November 13, 2014, Defendant served a deposition notice on Plaintiff. (Dkt. No. 92-1 at 5.) The deposition was scheduled for December 2, 2014, at Upstate Correctional Facility ("Upstate"). *Id.*

On November 18, 2014, Plaintiff wrote defense counsel a letter in response to the notice

of deposition stating that "it [would not] happen" because he believed that he would be released from Upstate before the deposition. (Dkt. No. 92-1 at 1-4.)  In the correspondence, Plaintiff used such language as "your devil ass" and "cocksucker" when addressing defense counsel.  *Id.* at 2. In response, Defendant moved to stay discovery, requested that the Court issue an "immediate order to show cause why sanctions should not be issued," and moved to dismiss.  (Dkt. No. 92.) Alternatively, defense counsel requested the Court to issue an Order directing Plaintiff to appear for the deposition scheduled on December 2, 2014.  *Id.*

The Court granted Defendant's request in part and denied it in part.  (Dkt. No. 94.) Specifically, the Court denied the motion to show cause without prejudice but granted the motion seeking to compel Plaintiff to attend a deposition by stating that "Defendant is to timely serve an amended notice of deposition requiring Plaintiff's deposition to occur at a date and time between 1/2/2015 and 1/30/2015.  Plaintiff's failure to appear for the re-noticed deposition may result in sanctions including dismissal of the action."  *Id.*

Plaintiff was transferred to Clinton Correctional Facility ("Clinton") around December 5, 2014.  (Dkt. No. 100.)  On December 12, 2014, defense counsel complied with the Court Order and served an Amended Notice of Deposition to conduct Plaintiff's deposition on January 15, 2015.  (Dkt. No. 102.)  Plaintiff again responded that he would not submit to a deposition.  (Dkt. Nos. 107, 108.)

On January 9, 2015, the Court issued an Order stating that Plaintiff's failure to appear for the scheduled deposition would result in sanctions, including the possible dismissal of his complaint.  (Dkt. No. 109.)  Due to a scheduling conflict, defense counsel changed the date of the deposition to January 16, 2015.  (Dkt. No. 110.)  Defense counsel served a second Amended

Notice of Deposition on Plaintiff on January 14, 2015. (Dkt. No. 110-1.) The amended notice, along with a letter warning Plaintiff that his failure to appear and cooperate would result in a motion to dismiss and a motion for costs, was personally served on Plaintiff by Lieutenant Snow at Clinton. *Id.*

Plaintiff appeared for the video deposition on January 16, 2015. (Dkt. No. 113-4.) However, Plaintiff refused to be sworn in or answer any questions, stating "you're not going to depose me. Whatever the repercussions are in the case, I'll deal with that." *Id.* at 5.[1] Defense counsel warned Plaintiff that Defendant would move to dismiss the complaint and seek costs. *Id.* at 6-7. Plaintiff refused to speak and the deposition was terminated. *Id.* at 7. Defendant incurred a charge of $170.85 for the deposition. (Dkt. No. 113-5.)

On January 20, 2015, Defendant reported these facts to the Court in a status report. (Dkt. No. 111.) Plaintiff responded by filing a letter dated January 23, 2015, stating that he would not submit to a deposition. (Dkt. No. 112.)

Defendant now moves pursuant to Federal Rule of Civil Procedure 37(d) to dismiss Plaintiff's complaint as a sanction for Plaintiff's failure to submit to a deposition, or, alternatively, to dismiss the complaint as a sanction pursuant to Federal Rule of Civil Procedure 11 for making a sworn material misrepresentation to the Court. (Dkt. No. 113.) Plaintiff has made no official response to the motion but has sent the Court several letters and motions. (Dkt. Nos. 116, 117, 119, 120.)

---

[1]    Citations to page numbers in Court documents refer to the page numbers assigned by the Court's electronic filing system.

## II.    ANALYSIS

### A.    Plaintiff's complaint should be dismissed under Rule 37(d) because, after an "analysis of the full record," Plaintiff's failure to submit to a deposition was "willful" and in "bad faith."

Defendant moves under Federal Rule of Civil Procedure 37(d) to dismiss the complaint as a sanction for Plaintiff's failure to appear at his properly noticed deposition.  (Dkt. No. 113.) For the reasons discussed below, I find that dismissal of the complaint is warranted on this ground.

Under Rule 37(d), "[t]he Court where the action is pending may, on motion, order sanctions if [] a party . . . fails . . . to appear for that person's deposition."  Fed. R. Civ. P. 37(d). Sanctions may include any of those listed in Rule 37(b)(2), including "dismissing the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).

The term "appear" as used in Rule 37(d) is "strictly construed in this Circuit and only occurs where a deponent literally fails to show up for a deposition session." *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986).  Where a deponent "physically appears at a deposition but refuses to be sworn and testify, then the proper procedure is to first obtain an order from the court, as authorized by Rule 37(a), directing him to be sworn and testify."  *Id.*  If a party then refuses to obey the court's order, Rule 37 "authorizes the court to impose . . . drastic sanction[s] [such as dismissal]."  *Sec. & Exch. Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975).  "The imposition of a Rule 37(d) dismissal must be based on an analysis of the full record of the case," and where a "litigant's failure to comply with proper discovery constitutes willfulness, bad faith, or gross negligence," dismissal may still be warranted even absent a clear 37(a) motion to compel a party to testify at a deposition.  *See Plevy v. Scully*, 89

F.R.D. 665, 667 (W.D.N.Y. 1981).

Here, defense counsel has requested the Court to compel Plaintiff to submit to a deposition. (Dkt. No. 92.) On two occasions the Court has ordered Plaintiff to comply with discovery and submit to a deposition, and on both of those occasions Plaintiff has refused to do so. (Dkt. Nos. 94, 109.) Though it is unclear whether Defendant, despite these multiple court orders, technically satisfied the obligation under Rule 37(a) to obtain an order directing that Plaintiff be compelled to be sworn in and testify, Plaintiff's noncompliance with Court orders amounts to willfulness or bad faith that justifies dismissal of the complaint.

Plaintiff refused to submit to the initially scheduled deposition because he did not want to be deposed until after he had been transferred to a new correctional facility. (Dkt No. 92-1.) In his refusal letter, he used such language as "your devil ass" and "cocksucker" when addressing defense counsel. *Id.* at 2. In response, Defendant requested that the Court issue an Order to show cause why sanctions should not be issued, moved to dismiss the complaint, or requested that the Court issue an Order directing Plaintiff to appear for the deposition. (Dkt. No. 92.) The Court granted the motion seeking to compel Plaintiff to attend a deposition, and notified Plaintiff that his failure to appear for the subsequently scheduled deposition could result in sanctions, including dismissal of the action. (Dkt. No. 94.)

Once Plaintiff was transferred to Clinton, Defendant served an Amended Notice of Deposition to conduct Plaintiff's deposition in January. (Dkt. No. 102.) Plaintiff again refused to submit to the second scheduled deposition but gave no justification why. (Dkt. Nos. 107, 108.) In response, the Court issued a second Order stating that Plaintiff's failure to appear for a deposition would result in sanctions, including the possible dismissal of his complaint. (Dkt. No.

109.)

Although Plaintiff appeared for the subsequently scheduled deposition, he refused to be sworn in or answer any questions, stating, "you're not going to depose me. Whatever the repercussions are in the case, I'll deal with that." (Dkt. No. 113-4 at 5.) When Defendant reported these facts to the Court in a status report, Plaintiff responded by filing a letter, again refusing to submit to a deposition. (Dkt. Nos. 111, 112.)

Given the aforementioned facts, the Court finds that Plaintiff was willful. Apart from the initial deposition, Plaintiff has provided no reason why he refuses to be deposed. He did not seek to adjourn the deposition, but instead refused outright to appear. When he did finally appear after the second Court warning, he refused to speak. All of his actions manifest an intent to willfully delay the proceeding. Plaintiff was also aware of the potential consequences of his actions. He has been warned twice by the Court, and said himself he would "deal" with "whatever repercussions" would result from refusing to submit to the deposition. Furthermore, other sanctions normally available under Rule 37 are inadequate in Plaintiff's case. *See Plevy*, 89 F.R.D. 665 at 667 (finding that monetary sanctions, due to Plaintiff's "indigency and incarceration," would be a "hollow gesture"). Accordingly, based on an "analysis of the full record of the case," and cognizant of Plaintiff's status as a *pro se* litigant, his failure to submit to a deposition warrants dismissal of the action.

B.     **Plaintiff's complaint should not be dismissed under Rule 11 because of the "special solicitude" extended to *pro se* plaintiffs.**

Defendant argues that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 11 for "making a sworn material misrepresentation the Court." (Dkt. No. 113-

6 at 10.) Specifically, as noted above, in the complaint, Plaintiff only reported one prior lawsuit when he has in fact initiated at least eight more lawsuits and has made such material misrepresentations in other cases before this Court. For the reasons discussed below, I find that dismissal of the complaint is inadvisable on these grounds.

Rule 11 requires that a motion for sanctions "be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Furthermore, once the motion is served, "it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdraw or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This so-called "safe harbor provision" permits the party to be sanctioned "the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). A motion that fails to satisfy the safe-harbor provision must be denied. *See Bryant v. Britt*, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (finding that because movant "failed to comply with Rule 11(c)[(2)]," there was "no error in the district court's decision" to deny sanctions).

Here, the docket reflects the Defendant failed to comply with the twenty-one day safe harbor provision. Therefore, dismissal of Plaintiff's complaint pursuant to Rule 11 is unwarranted. However, courts may still impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order a[] . . . party to show cause why conduct specifically described in the order has not violated Rule 11(b).") The Second Circuit has held that in order to impose sanctions *sua sponte*, the court must find that the party to be sanctioned acted with subjective bad faith. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90-92 (2d Cir. 2003). Bad faith can be

inferred when a party's actions are "entirely without color" and are motivated by "improper purposes" such as harassment or delay. *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995). Furthermore, *"pro se* litigants, like any others, are subject to the strictures of Rule 11, and may properly be sanctioned for making material misrepresentations to the court." *Dolberry v. Jakob*, No. 9:11-CV-1018 (DNH/DEP)*, 2014 U.S. Dist. LEXIS 45457, at *17, 2014 WL 1292225, at *5 (N.D.N.Y. Feb. 28, 2014[2]).[3] Such sanctions could include dismissal of the plaintiff's complaint should the court find that a party acted in bad faith when he made material misrepresentations to the court. *Id*. However, this district has been reluctant to dismiss Plaintiff's complaints on these grounds "in light of the Second Circuit's oft-repeated admonishment to extend special solicitude to *pro se* litigants." *See Cruz v. Zwart*, No. 9:13-CV-1287 (TJM/DEP), 2014 WL 4771664, at *6 n.4 (N.D.N.Y. Sept. 24, 2014).[4]

Here, Plaintiff made a material misrepresentation to the Court when in the complaint he disclosed only one prior lawsuit when he had in fact initiated at least eight more lawsuits, a misrepresentation he has made to the Court on other occasions. *See Cruz v. Traynor,* No. 12-CV-1454 (N.D.N.Y. filed Sept. 21, 2012) (dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915(A)(b)); *Cruz v. Tichenor*, No. 08-CV-0591 (N.D.N.Y. filed June 5, 2008) (dismissed for

---

[2]   Lexis and Westlaw list different dates for this decision. The Court has used the date listed by Lexis, which reflects the date of the report-recommendation containing the quoted langauge.

[3]   The Court will provide Plaintiff with a copy of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[4]   The report-recommendation containing the quoted language is not available on Lexis.

failure to prosecute); *Cruz v. Lashway*, No. 06-CV-0867 (N.D.N.Y. filed July 17, 2006) (dismissed on summary judgment); *Cruz v. Church*, No. 05-CV-1067 (N.D.N.Y. filed Aug. 25, 2005) (no-cause jury verdict); *Cruz v. Thompson*, No. 04-CV-1497 (N.D.N.Y. filed Dec. 29, 2004) (voluntarily dismissed); *Cruz v. Hillman*, No. 01-CV-4169 (S.D.N.Y. filed May 17, 2001) (settled); *Cruz v. Wead*, No. 97-CV-0846 (W.D.N.Y. filed Oct. 23, 1997) (dismissed on summary judgment); *Cruz v. Senkowski*, No. 90-CV-0289 (W.D.N.Y. filing date not available electronically) (petition for writ of habeas corpus dismissed for failure to prosecute).

Given that this is not the first time Plaintiff has made such a misrepresentation, the Court could reasonably find that Plaintiff acted in bad faith. Therefore, dismissal of the complaint under Rule 11 could potentially be warranted. However, in light of the special solicitude extended to *pro se* litigants in this Circuit, I recommend that the Court not dismiss the complaint pursuant to Rule 11. *See Toliver v. Fischer*, No. 9:12-CV-77 (MAD/ATB), 2014 U.S. Dist. LEXIS 12744, at *3-4, 2014 WL 411569, at *1 (N.D.N.Y. Feb. 3, 2014) (finding that "plaintiff's failure to list all of his prior lawsuits [was not] so unreasonable as to require the imposition of sanctions [pursuant to Rule 11]").

## III.   CONCLUSION

Weighing the aforementioned facts with the special solicitude that must be granted to *pro se* litigants, dismissal is warranted in this case under Rule 37 of the Federal Rules of Civil Procedure, but not under Rule 11. Therefore, I recommend that the Court dismiss Plaintiff's complaint without prejudice.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court **<u>GRANT</u>** Defendant's motion to dismiss (Dkt. No.

113) without prejudice; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Dolberry v. Jakob,* No. 11-CV-1018, 2014 U.S. Dist. LEXIS 41584, 2014 WL 1292225 (N.D.N.Y. Mar. 28, 2014) and *Toliver v. Fischer*, No. 9:12-CV-77 (MAD/ATB), 2014 U.S. Dist. LEXIS 12744, 2014 WL 411569 (N.D.N.Y. Feb. 3, 2014).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 6, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2014 WL 1292225
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Andre DOLBERRY, Plaintiff,
v.
Correction Officer JAKOB, et al., Defendants.

No. 9:11–CV–1018 (DNH/
DEP). | Signed March 28, 2014.

**Attorneys and Law Firms**

Andre Dolberry, Fishkill, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Adele Taylor–Scott, Esq., Ass't Attorney General, of Counsel, Albany, NY, for Defendants.

### *DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Andre Dolberry, who is also sometimes known as Andre Duberry, brought this action pursuant to 42 U.S.C. § 1983. On February 28, 2014, the Honorable David E. Peebles, United States Magistrate Judge, advised by Report–Recommendation that plaintiff's motion for summary judgment be denied, and that plaintiff's complaint in this action be dismissed based upon his material misrepresentation to the court, under oath, that he has not brought any prior actions relating to his imprisonment. Plaintiff timely filed objections to the Report–Recommendation.

Based upon a de novo review of the portions of the Report–Recommendation to which plaintiff objected, the Report–Recommendation is accepted and adopted in all respects. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's motion for summary judgment is DENIED;

2. Plaintiff's complaint is DISMISSED in its entirety based upon his material misrepresentations to the court and abuse of the litigation process; and

3. Defendants' motion for summary judgment is DENIED as moot.

The Clerk is directed to serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Andre Dolberry, who is also sometimes known as Andre Duberry and has an extensive litigation history, has commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants deprived him of his civil rights while he was incarcerated in a state prison facility. In his complaint, plaintiff alleges that he was issued false misbehavior reports in retaliation for exercising his First Amendment rights, he was threatened and harassed by corrections officials, his rights to procedural due process and equal protection were violated, and the superintendent of the facility, though not directly involved, was complicit in all of those violations.

Currently pending before the court in connection with the action are cross-motions for summary judgment. For the reasons set forth below, I recommend that plaintiff's motion for summary judgment be denied, and that plaintiff's complaint in this action be dismissed based upon his material misrepresentation to the court, under oath, that he has not brought any prior actions relating to his imprisonment.

### I. *BACKGROUND* [1]

Although plaintiff is currently confined elsewhere, his claims in this action arise from his previous incarceration in the Coxsackie Correctional Facility ("Coxsackie"), a prison operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1.

Plaintiff's complaint asserts claims against defendant Glenn Saltsman, a corrections officer at Coxsackie, based upon

two separate incidents. The first involved a complaint by an unnamed inmate who reported to defendant Saltsman, on July 5, 2005, that he was being threatened by the plaintiff. *Dkt. No. 45–16 at 1; Dkt. No. 45–21.*Following an investigation by the area supervisor, Sargeant Melendez, who is not a named defendant in this action, defendant Saltsman issued a misbehavior report to plaintiff charging him with violating a prison rule prohibiting inmates from making threats. *Dkt. No. 45–16 at 2; Dkt. No. 45–17; Dkt. No. 45–21 at 22 .*Defendant Christopher McDermott, a corrections lieutenant employed by the DOCCS, presided over a Tier II disciplinary hearing, held on July 14, 2009, stemming from that misbehavior report. [2] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 2.* Following the hearing, at which plaintiff was given the opportunity to call witnesses and testify on his behalf, plaintiff was found guilty of threatening another inmate. [3] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 14,* 19. As a result of that finding, defendant McDermott sentenced plaintiff to serve thirty days of keeplock confinement, with a corresponding loss of certain privileges. [4] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 14,* 19.

**\*2** The second incident involving defendant Saltsman occurred on August 20, 2009, while the corrections officer was making routine rounds at the facility.*Dkt. No. 45–16 at 2.* According to defendant Saltsman, after observing that plaintiff had placed a towel over his lamp, creating a potential fire hazard, he ordered Dolberry to remove the towel. *Id.* at 3. Plaintiff responded by stating, " 'This is my cell, I'll keep it the way I want.' " *Id* . Defendants maintain plaintiff complied with defendant Saltsman's request only after he was given two additional direct orders. *Id.* Based upon that incident, defendant Saltsman issued plaintiff a misbehavior report accusing Dolberry of violating three prison rules, including creating a fire hazard, disobeying a direct order, and failing to maintain orderliness of his living quarters. *Id.; Dkt. No. 45– 18; Dkt. No. 1 at 14.*There is no record regarding the results of any disciplinary hearing that may have occurred following the issuance of that misbehavior report.

According to defendant Saltsman, at the time both of those misbehavior reports were written, he was not aware of the fact that plaintiff had filed grievances or complaints against him. *Dkt. No. 45–16 at 3.*

Plaintiff's claims against defendant John Jakob, another corrections officer at Coxsackie, center around several misbehavior reports issued to Dolberry by that defendant between June and October of 2009. *See generally Dkt. No. 1; Dkt. No. 45–11 at 2.* The first of those was issued on July 3,

2009, charging plaintiff with violating several facility rules, by disobeying a direct order, being out of place, making a false statement, making threats, and committing a movement violation. *Dkt. No. 45–11 at 3; Dkt. No. 45–20 at 2,* 3, 13. According to defendant Jakob, that misbehavior report was issued based upon Dolberry's refusal to line up properly following an evening meal on July 3, 2009, and lying about not being in the proper order. *Dkt. No. 45–11 at 3; Dkt. No. 45–20 at 13.*Plaintiff alleges that the misbehavior report was issued in retaliation for having filed "grievance complaints on staff on 6/3/09."*Dkt. No. 1 at 12.*Defendant Jakob maintains that, at the time he issued the misbehavior report dated July 3, 2009, he had no knowledge of plaintiff having submitted any written complaints against him. *Dkt. No. 45–11 at 3.* On July 10, 2009, defendant McDermott conducted a Tier II disciplinary hearing to address the charges contained in the July 3, 2009 misbehavior report. *Dkt. No. 45–19 at 2; Dkt. No. 45–20 at 2–7.*Defendant McDermott dismissed the charge of making threats immediately upon commencing the hearing. *Dkt. No. 45–20 at 3.* Plaintiff was permitted to, and did, testify on his behalf, and he was given an opportunity to call witnesses. *Id.* at 3–6.At the conclusion of the hearing, defendant McDermott found plaintiff not guilty of disobeying a direct order and providing a false statement. *Id.* at 6, 10.Plaintiff was found guilty, however, of being out of place and a movement violation. *Id.* Defendant McDermott sentenced plaintiff to twenty days loss of privileges, although the sanction was suspended for sixty days.*Id.* at 6–7, 10.

**\*3** A second misbehavior report was issued to plaintiff by defendant Jakob on August 23, 2009, accusing Dolberry of additional prison rule infractions, including disobeying a direct order, failing to maintain orderliness of his living quarters, and harassment. *Dkt. No. 45–11 at 3; Dkt. No. 46– 2 at 18.*That misbehavior report was issued after defendant Jakob ordered plaintiff to remove his locker from the top of plaintiff's desk, and, in response, plaintiff said, " 'I'll do what I want. I'm suing your white ass.' " *Dkt. No. 45–11 at 3; DKt. No. 46–2 at 18; see also Dkt. No. 1 at 17.*A Tier II disciplinary hearing was conducted regarding that misbehavior report on September 3, 2009, by Lieutenant Meigs, a DOCCS employee. *Dkt. No. 46–2 at 2–12.*At the hearing, plaintiff was permitted to testify in his defense, but refused an opportunity to call any witnesses on his behalf. *Id.* at 5–6.At the conclusion of the hearing, Lieutenant Meigs found plaintiff guilty of disobeying a direct order, but not guilty on the other charges. *Id.* at 6, 15.As a sanction, plaintiff was sentenced to fifteen days loss of privileges.*Id.*

A third misbehavior report was issued by defendant Jakob to the plaintiff, on September 1, 2009, charging him with being out of place and failing to comply with the disciplinary sanction, in violation of prison rules. [5] *Dkt. No. 45–11 at 4; Dkt. No. 45–15; Dkt. No. 45–22 at 11.*That misbehavior report, which plaintiff characterizes as "bogus," *Dkt. No. 1 at 17,* was issued based upon defendant Jakob's belief that plaintiff had attended outside recreation despite having been previously issued a disciplinary sanction that included loss of recreation during that period. *Dkt. No. 45–11 at 3–4; Dkt. No. 45–15; Dkt. No. 45–22 at 11.*On September 11, 2009, defendant McDermott conducted a Tier II disciplinary hearing related to that misbehavior report. *Dkt. No. 45–19 at 4; Dkt. No. 45–22 at 2–5.*Plaintiff testified in his defense but declined an opportunity to call any witnesses. *Dkt. No. 45–22 at 4.* Defendant McDermott found plaintiff guilty on both charges, and sentenced him to fourteen days keeplock confinement and a loss of certain privileges. *Id.* at 4, 8.

A fourth misbehavior report was authored by defendant Jakob on or about October 9, 2009, accusing plaintiff of threatening Jakob and his family.*Dkt. No. 45–11 at 4; Dkt. No. 45–25 at 4.* Plaintiff alleges that this misbehavior report was fabricated and retaliatory. *Dkt. No. 1 at 18.*That misbehavior report resulted in a Tier III disciplinary hearing, conducted by defendant Eric Gutwein, a DOCCS hearing officer, on October 15, 2009. *Dkt. No. 45–24 at 2; Dkt. No. 45–25 at 1–3.*Following the hearing, defendant Gutwein found the plaintiff guilty of making threats and engaging in violent conduct, and sentenced him to serve a period three months of disciplinary confinement in the facility's special housing unit ("SHU"), to commence on October 23, 2009. [6] *Dkt. No. 45–24 at 3; Dkt. No. 45–25 at 1.* That determination was subsequently reversed, however, by the DOCCS central office based upon a procedural error, and plaintiff was released from SHU confinement on November 12, 2009, after serving only twenty-one days of disciplinary confinement. *Dkt. No. 45–24 at 3; Dkt. No. 45–26 at 2; Dkt. No. 45–27.*

## II. *PROCEDURAL HISTORY*

**\*4** Plaintiff commenced this action on August 25, 2011, in the Western District of New York. *Dkt. No. 1.* The action was subsequently transferred to this district, and plaintiff was thereafter granted leave to proceed *in forma pauperis.* [7] Dkt. Nos. 3, 4, and 5. Plaintiff's complaint, as modified by the court's initial order, *Dkt. No. 5,* names, as defendants, Corrections Officers Jakob, Saltsman, and Silverman; Coxsackie Superintendent Martuscello;

Acting Superintendent Gutwein; and Corrections Lieutenant McDermott. *See generally Dkt. No. 1.* In it, plaintiff asserts causes of action for the deprivation of procedural due process and equal protection, in violation of the Fourteenth Amendment; unlawful retaliation, in violation of First Amendment; denial of court access, in violation of the First, Fifth, and Fourteenth Amendments; and cruel and unusual punishment, in violation of the Eighth Amendment. *Id.*

On March 25, 2013, following the close of discovery, plaintiff moved for the entry of summary judgment in his favor. *Dkt. No. 37 .*On May 20, 2013, defendants submitted their opposition to that motion, and simultaneously filed a cross-motion for summary judgment seeking dismissal of plaintiff's complaint on a variety of grounds. Dkt. Nos. 44–47.Plaintiff has since responded in opposition to defendants' cross-motion. *Dkt. No. 49.*The parties' cross-motions for summary judgment are now ripe for determination, and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See*Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Plaintiff's Material Misrepresentation to the Court*

In his complaint, which was filed utilizing a pre-printed form from the Western District of New York intended for use in civil rights actions brought under 42 U.S.C. § 1983, plaintiff was asked the following question: "Have you begun any other lawsuits in federal court which relate to your imprisonment?"*Dkt. No. 1 at 3.* In response, defendant answered, "No." *Id.*That answer is demonstrably false. By the time plaintiff had commenced this action, he had already developed a robust inmate litigation history, having filed at least seven cases in this circuit, six of which were dismissed, upon initial review, as frivolous or for failure to state a cause of action, pursuant to 28 U.S.C. § 1915(e)(2). [8]

In failing to disclose his prior litigation history, plaintiff provided misinformation to the court regarding a material issue. As one of my former colleagues has noted regarding the materiality of an inmate-plaintiff's prior litigation history,

> [g]enerally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1)

whether any of the issues in the action have been previously litigated and decided (for purpose of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned 'three strikes' for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a 'bar order' (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a 'vexatious' litigator pursuant to 28 U.S .C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

**\*5** *Chavis v. Curlee,* No. 06–CV–0049, 2008 WL 508694, at \*10 (N.D.N.Y. Feb. 21, 2008) (Kahn, J., *adopting report and recommendation by* Lowe, M.J.).[9] While the second of those four articulated rationales does not apply in the case because plaintiff was not a prison inmate when this suit was commenced, the remaining three are valid considerations in this action given plaintiff's history. Plaintiff's failure to truthfully answer inquiry concerning his prior litigation history represents a fraud upon the court, and a violation of his obligations under Rule 11 of the Federal Rules of Civil Procedure.[10]

*Pro se* litigants, like any others, are subject to the strictures of Rule 11, and may properly be sanctioned for making material misrepresentations to the court. *See, e.g., Manwani v. Brunelle,* No. 95–6080, 1995 WL 732686, at \*2 (2d Cir. Dec. 8, 1995) (unpublished) (affirming district court's Rule 11 sanctions issued against a *pro se* litigant). In view of plaintiff's gross and cavalier misrepresentation concerning his litigation history in this and other actions he has filed in this circuit, the imposition of sanctions is clearly warranted.[11]

In their motion, defendants request that the court sanction plaintiff, due to his misrepresentations, by dismissing the complaint in this action. *Dkt. No. 46–8 at 23–25.*I note, however, that defendants have failed to provide plaintiff with

the twenty-one day safe harbor period called for in Rule 11(c)(2), a failure that would, on its own, warrant denial of the motion. *See Fierro v. Gallucci,* 423 F. App'x 17, 18–19 (2d Cir.2011) (finding that the district court "was required to deny plaintiff's motion for sanctions for failure to comply with the 21–day 'safe harbor,' which requires Rule 11 motions be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims"). The court, however, is permitted under Rule 11 to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond."Fed.R.Civ.P. 11(c)(1); *see also*Fed.R.Civ.P. 11(c)(3) ("On its own, the court may order a[ ] ... party to show cause why conduct specifically described in the order has not violated Rule 11(b).").The Second Circuit has held that, to impose sanctions *sua sponte,* courts must first find subjective bad-faith on the party to be sanctioned. *In re Pennie & Edmonds LLP,* 323 F.3d 86, 90 (2d Cir.2003).[12]

In this case, in light of plaintiff's chronicled history of unabashed misstatements to this and other courts, I find that those misstatements were made in bad faith, and that dismissal of his complaint is warranted.[13] *See Elijah Bell v. Lasaceli,* No. 08–CV–0278, 2009 WL 1032857, at \*4 (W.D.N.Y. Apr. 15, 2009) ("Because Plaintiff has repeatedly misrepresented his litigation history to the Court ..., the Court finds that he has violated Fed.R.Civ.P. 11 and therefore, this action will dismissed, in the alternative, on that basis."); *Chavis,* 2008 WL 508694, at \*11 (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint); *see also Muniz v.. Goord,* No. 04–CV–0479, 2007 WL 2027912, at \*6 n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint (collecting cases)); *see also Hoskins v. Dart,* 633 F.3d 541, 543 (7th Cir.2011) (affirming district court's dismissal of the appellant's case as a sanction for failing to accurately disclose his litigation history); *Greer v. Schriro,* No. 06–15537, 2007 WL 4163413 (9th Cir.2007) ("The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history."); *Mathis v. Smith,* 181 F. App'x 808, 810 (11 th Cir.2006) (finding no abuse of discretion by the district court where it dismissed the plaintiff's case in light of his dishonesty); *Joiner*

*v. Delo,* 905 F.2d 206, 208 (8th Cir.1990) (affirming district court's rule 11 dismissal of plaintiff's claims in light of the plaintiff's "blatant misrepresentation of the circumstances of his medical treatment").

### B. *The Parties' Cross–Motions for Summary Judgment*

**\*6** Notwithstanding my recommendation that plaintiff's complaint be dismissed due to his repeated dishonesty with the court, I have analyzed the parties' cross-motions for summary judgment below in the event that recommendation is not adopted.

### 1. *Legal Standard Governing Motions for Summary Judgment*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248;*see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party.*Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ.*

*Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### 2. *Plaintiff's Motion for Summary Judgment*

Plaintiff has moved for summary judgment in his favor. *Dkt. No. 37.*Plaintiff's motion, however, reflects a fundamental misunderstanding of the law of summary judgment. In his memorandum, Dolberry makes the following statements:

[T]here exists a genuine issue of material facts [sic] to whether C.O. Jakob's false disciplinary tickets for threats against Dolberry was in retaliation, C.O. Saltsman['s] tickets were in retaliation, and Supt. Martuscello ignored Dolberry's complaints for months ....

**\*7** It cannot be argued here the facts are well established and settled[.]

*Dkt. No. 37–1 at 2.* Because plaintiff does not argue, nor has he established, that no genuine disputes of material fact exists for a factfinder at trial, he has failed to sustain his burden under Rule 56. Accordingly, I recommend that plaintiff's motion for summary judgment be denied.

### 3. *Defendants' Motion for Summary Judgment*

#### i. *Plaintiff's Procedural Due Process Claim*

Among the claims asserted by the plaintiff is a procedural due process cause of action against defendants McDermott and Gutwein. *Dkt. No. 1 at 21–24.*That claim appears to stem from five Tier II or Tier III disciplinary hearings conducted by those defendants, the details of which are listed below. [14]

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and

(2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84; *Tellier,* 280 F.3d at 79–80; *Hynes,* 143 F.3d at 658. By its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004) (citing *Welch v. Bartlett,* 196 F.3d 389, 394 n. 4 (2d Cir.1999)). The issue, then, is whether the allegations related to the conditions of plaintiff's keeplock and SHU confinement rise to the level of an atypical and significant hardship.

**\*8** Atypicality in a *Sandin* inquiry is normally a question of law .[16] *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999)."[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker,* 139 F.3d 329, 336 (2d Cir.1998) (citing *Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce,* 139 F.3d at 336; *Hynes,* 143 F.3d at 658.

In this case, to the extent that plaintiff's due process claim centers around his confinement in keeplock or the SHU, the lengths of time he spent in either one as a result of a sanction imposed by defendants McDermott and Gutwein are insufficient to give rise to a liberty interest implicating a prisoner's due process rights.[17] The Second Circuit has made clear that disciplinary confinements of fewer than 101 days and not involving extraordinary circumstances do not constitute atypical and significant hardships. *Palmer v. Richards,* 364 F.3d 60, 65 (2d Cir.2004) (citing *Sealey,* 197 F .3d at 589). Here, plaintiff's disciplinary confinements, none of which involved anything but "normal" circumstances, endured for no more than thirty days in keeplock and twenty-one days in the SHU confinement beginning on October 23, 2009, and ending on November 12, 2009. *Dkt. No. 45–24 at 3; Dkt. No. 45–27.* Accordingly, I find that no genuine dispute of material fact exists regarding whether plaintiff's liberty interests were violated, thus implicating his procedural due process rights. *See Palmer,* 364 F .3d at 65–66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less

than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions."(citing *Arce,* 139 F.3d at 335–36; *Hynes,* 143 F.3d at 658–59; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996)). Accordingly, I recommend that plaintiff's due process claim asserted against defendants McDermott and Gutwein be dismissed without examining the sufficiency of the procedural safeguards afforded to him.

### ii. *Plaintiff's Cruel and Unusual Punishment Claims*

Throughout plaintiff's complaint are allegations that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Although this is anything but clear, it appears that the claim is centered around (1) the actions of defendant Jakob, who allegedly subjected plaintiff to threats, abuse, and harassment; (2) the twenty-one day period of SHU confinement imposed by defendant Gutwein; and (3) the denial by defendant Silverman, another corrections officer stationed at Coxsackie, of a food tray on one occasion.

### a. *Eighth Amendment Principles Generally*

**\*9** The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or 'involve[s] the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73 (1976) (citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both objective and subjective requirements. *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996). As to the objective prong, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.' " *Jolly,* 76 F.3d at 480 (quoting *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.2985)); *see also Walker v. Schult,* 717 F.3d. 119, 125 (2d Cir.2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). To meet the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly,* 76 F.3d at

480 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837;*see also Waldo,* 1998 WL 713809, at *2; *Davidson,* 920 F.Supp. at 308.

**b. *Threats and Harassment***

Central to the cruel and unusual claims asserted by the plaintiff in this action is his contention that he was subjected to threats and abuse by defendant Jakob. *See generally Dkt. No. 1.* Defendants seek dismissal of those claims. *Dkt. No. 46–8 at 15.*Because it is well settled in this circuit that mere verbal threats and harassment not resulting in physical injury do not give rise to an Eighth Amendment violation, I recommend that this claim be dismissed. *See Felder v. Fillion,* 368 F. App'x 253, 256 (2d Cir.2010) ("The allegation that [the defendant] threatened [the plaintiff] verbally was not a sufficient basis for a claim of Eighth Amendment violation because [the plaintiff] did not present evidence of any injury resulting from those threats."(citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)).

**c. *SHU Confinement***

 **\*10** Plaintiff's Eighth Amendment claim asserted against defendant Gutwein stems from Gutwein's imposition of a thirty-day disciplinary SHU confinement. As noted above in connection with plaintiff's due process claim, he has not alleged, nor has he presented evidence suggesting, that the conditions of confinement in the SHU were constitutionally inadequate. In other words, there is nothing in the record to give rise to a dispute of material fact regarding whether the disciplinary confinement was, objectively, sufficiently serious, or that, subjectively, defendant Gutwein exhibited deliberate indifference to plaintiff's health or safety. *Farmer,* 511 U.S. at 834. Accordingly, I recommend that plaintiff's Eighth Amendment claim against defendant Gutwein be dismissed.

**d. *Denial of Food***

Another component of plaintiff's Eighth Amendment claim is his contention that he was denied a meal on one isolated occasion by defendant Silverman. *Dkt. No. 1 at*

27.Courts in this circuit have routinely held, however, that the denial of a single meal is constitutionally *de mininis,* and insufficient to support an Eighth Amendment claim. *Rush v. Fischer,* 923 F.Supp.2d 545, 555–56 (S.D.N.Y.2013) (citing *Hankerson v. Nassau Cnty. Corr. Facility,* No. 12–CV–5282, 2012 WL 6055019, at *3 (E.D.N.Y. Dec. 4, 2012); *Scarbrough v. Evans,* No. 11–CV–0131, 2012 WL 4364511, at *5 (N.D.N.Y. May 17, 2012) (Homer, M.J.), *report and recommendation adopted by*2012 WL 4350792 (Mordue, J.)). I therefore recommend dismissal of this claim against defendant Silverman.

**iii. *Plaintiff's Denial of Access to the Courts Claim***

In his complaint, plaintiff alleges that defendant Jakob's issuance of misbehavior reports to him effectively denied him access to the courts. *Dkt. No. 1 at 9,* 11, 12, 13, 26. Defendants seek dismissal of this claim based on the fact that there is nothing in the record from which a reasonable factfinder could conclude that plaintiff suffered any prejudice in his lawsuits due to defendant Jakob's issuance of misbehavior reports. *Dkt. No. 46–8 at 17–18.*

Undoubtedly, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith,* 430 U.S. 817, 824 (1977); *accord, Lewis v. Casey,* 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts.*"(emphasis in original)). This right is implicated when prison officials "actively interfer [e] with inmates' attempts to prepare legal documents, or file them [.]"*Lewis,* 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to the courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim."*Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis,* 320 F.3d at 351. Second, plaintiff must demonstrate that he suffered an actual injury. *Id.*

 **\*11** In this case, there is insufficient record evidence to give rise to a genuine dispute of fact regarding either element of a court-access claim. One of the two lawsuits referenced in plaintiff's complaint is No. M–75662, which was pending in the New York State courts at the time defendant Jakob issued a misbehavior report to plaintiff on October 9, 2009. *Dkt. No. 1 at 13.*Publically available records regarding that case reveal that.the only defendant named in that case was the State of New York. *Dolberry v. State,* 71 A.D.3d 948 (2d

Dep't 2010). Accordingly, without more, I conclude that there is nothing in the record to support the implicit suggestion by the plaintiff that, at the time defendant Jakob issued that misbehavior ticket to plaintiff, he knew plaintiff had a lawsuit pending. Similarly, plaintiff references a case "02CV6418," which corresponds to one of plaintiff's civil rights lawsuits filed in the United States District Court for the Western District of New York. *Dolberry v. Levine,* No. 02–CV–6418 (W.D.N.Y. filed Aug. 6, 2002). Plaintiff has not explained how he suffered any prejudice in connection with that lawsuit, and it is unclear to the court based on publically available records how he suffered prejudice. Indeed, plaintiff settled with the defendants in that case for $3,300.00. *Levine,* No. 02–CV–6418, Dkt. No. 368 (W.D.N.Y.). It is also worth noting that there is nothing in the record to suggest that defendant Jakob, who is not a named-defendant in that case, knew about the lawsuit at any time.

In summary, because no reasonable factfinder could conclude, based on the record evidence, that defendant Jakob issued misbehavior reports to plaintiff deliberately and maliciously to interfere with his lawsuits or that plaintiff suffered prejudice as a result of the misbehavior reports, I recommend that his First Amendment court access claim be dismissed.

#### iv. *Plaintiff's Equal Protection Claim*

In his complaint plaintiff alleges, without elaboration, that the defendants deprived him of equal protection. *Dkt. No. 1 at 26,* 27. Defendants now argue that plaintiff's equal protection claim is insufficiently stated and not supported by the record. *Dkt. No. 46–8 at 25–26.*

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). To establish an equal protection cause of action, a plaintiff must prove that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995). The plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.' " *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (alteration omitted) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225 (2001)).

*\*12* In this instance, plaintiff has not identified, nor does the record disclose, any basis to conclude that he was treated differently than similarly situated individuals. Rather, plaintiff's two allegations giving rise to his equal protection claim, and the only record evidence surrounding that claim, are as follows:

> On several other occasions C.O. Jakob ... demonstrated racial, bias, prejudice, animosity while conspiring to deprive him of his Equal Protection of the laws under color of law.

> [Defendants Jakob and Silverman] acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws secured by the law.

*Dkt. No. 1 at 26,* 27. Even assuming, however, that the record gives rise to a dispute of fact regarding whether plaintiff was treated differently than other, similarly situated persons for purposes of an equal protection analysis, there is nothing in the record suggesting any disparity in the conditions experienced by the two (unidentified) groups as a result of purposeful discrimination directed at an identifiable suspect class. Accordingly, I recommend that plaintiff's equal protection claim be dismissed.

#### v. *Personal Involvement of Defendant Martuscello*

Among the defendants named in plaintiff's complaint is Daniel Martuscello, the Superintendent at Coxsackie. *See, e.g., Dkt. No. 1 at 8.* Plaintiff does not allege that defendant Martuscello was personally involved in the events giving rise to his claims. *Id.* Instead, he contends that Martuscello knew or should have known of the constitutional deprivations alleged based upon complaints and grievances lodged by the plaintiff, but failed to act to remedy the violations. *Id.*

It is well-established that, as a supervisor, defendant Martuscello cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*"*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the

subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

In this case, plaintiff supports his claims against defendant Martuscello with mere allegations that he sent Martuscello letters and complaints regarding the other defendants' unlawful conduct. Plaintiff has failed to provide any details with respect to those letters. In contrast to plaintiff's threadbare allegations, defendant Martuscello has submitted an affidavit, in support of defendants' pending motion, averring that plaintiff's letters and complaints were investigated by him or his staff, and has included copies of the pertinent investigatory reports. *Dkt. Nos. 45–3 at 2;* Dkt. Nos. 45–4–45–10.Those reports reflect that defendant Martuscello responded to plaintiff's concerns, and, in certain instances, accepted plaintiff's grievances. *Id.* Moreover, it is clear from plaintiff's reply that he has included defendant Martuscello as a defendant in this case based solely upon the acts of Martuscello's subordinates. *Dkt. No. 49 at 6.* In that reply, plaintiff notes the following:

> **\*13** [W]hatever staff was in charge of the investigation an [sic] withheld data of cons [sic], violations were being violated to Supt. Martuscello should be responsible for not doing his job properly putting Supt. Martuscello in the hot seat making it look like he wasn't doing his job when it was his subordinates, who I would make pay all lawyers fees and possible settlements or payments.

*Id.*

In light of the record now before the court, I conclude that there is an absence of a genuine dispute of fact regarding the personal involvement of defendant Martuscello in any of the allegations giving rise to the claims in this case. Accordingly, I recommend that all of plaintiff's claims against defendant Martuscello be dismissed.

### vi. *Plaintiff's Retaliation Claims*

Plaintiff's complaint contains several allegations regarding retaliatory conduct by defendants Jakob, Saltsman, and Sliverman. *See generally Dkt. No. 1.* Many of the allegations are vague and conclusory, and others are more specific. *Id.* Defendants request that plaintiff's retaliation claims be dismissed due to the absence of any record evidence to support the allegations. *Dkt. No. 46–8 at 20–23.*

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) ( "In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). The Second Circuit has cautioned, however, that, because of "the ease with which claims of retaliation may be fabricated," courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon,* 58 F.3d at 872;*accord, Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003).

To establish a claim under section 1983 for unlawful retaliation, a plaintiff must prove that (1) the conduct prompting the retaliatory acts was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Garrett v. Reynolds,* No. 99–CV–2065, 2003 WL 22299359, at \*4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.)."[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.' " *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)).

**\*14** Liberally construed, plaintiff's retaliation claims are based on allegations that, in retaliation for exercising his First Amendment rights by writing and filing grievances and civil lawsuits, defendants Jakob, Saltsman, and Silverman issued misbehavior reports to him. *See generally Dkt. No. 1.* According to plaintiff, some of the misbehavior reports

issued were false, while others were simply intended to harass plaintiff. *Id.* at 12–18.

As an initial matter, I recommend that the retaliation claim asserted against defendant Silverman be dismissed because there is no record evidence to support that claim aside from the following allegation contained in plaintiff's complaint:

> Here Duberry asserts [First Amendment] violations of retaliation claims advancing non conclusory allegations where he was protected by certain rights and C.O. Jakob, Saltsman, Silverman and some un[n]amed other C.O.s took adverse action against Duberry where a causal connection between the protected conduct and the adverse action.

*Dkt. No. 1 at 16.* Although there are other allegations giving rise to the retaliation claims against defendants Jakob and Saltsman, the foregoing is the only one involving defendant Silverman. Because that allegation does nothing more than advance conclusory and vague factual assertions, and there is no other evidence in the record supporting it, I recommend that the retaliation cause of action asserted against defendant Silverman be dismissed.

With respect to the record evidence that supports plaintiff's retaliation claim against defendants Jakob and Saltsman, defendants have produced evidence that Jakob issued four misbehavior reports against plaintiff during the times relevant to this action, and defendant Saltsman issued two. Dkt. Nos. 45–12–45–13, 45–15, 45–17–45–18, 45–25 at 4. Specifically, misbehavior reports were issued to Dolberry by defendant Jakob on July 3, August 23, September 1, and October 9, 2009, Dkt. Nos. 45–13, 45–15, 45–21 at 22, 45–25 at 4, and by Defendant Saltsman on July 5, and August 20, 2009. *Dkt. No. 45–17,* 45–18. There is conflicting evidence in the record, however, regarding the motivation behind the defendants' issuance of each of the tickets. Plaintiff alleges that they were issued in retaliation for his filing of grievances or lawsuits against defendants Jakob and Saltsman. *Dkt. No. 1 at 12–18.* Indeed, the record reflects that plaintiff filed at least six grievances or letters with prison officials regarding harassment by defendants Jakob and Saltsman. Dkt. Nos. 45–4 at 3, 45–5 at 5, 45–6 at 4–5, 45–7 at 8, 45–9 at 8, 45–10 at 6. Those defendants, on the other hand, purport that they issued each of the misbehavior reports to plaintiff based on

plaintiff's failure to obey prison facility rules and regulations. *See generally* Dkt. Nos. 45–11, 45–16.

It is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir.2001)* ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."); *Colon, 58 F.3d at 872* ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances."). Moreover, the Second Circuit has determined that a prison official's filing of a false misbehavior report against an inmate out of retaliatory animus constitutes adverse action. *Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.2004)* ("[The plaintiff] has sufficiently alleged ... adverse action on the part of the defendants—the filing of false misbehavior reports against [him] and his sentence of three weeks in keeplock—that would deter a prisoner of ordinary firmness from vindicating his ... constitutional rights through the grievance process and the courts[.]").

**\*15** The unanswered question in this case, then, is whether the grievances and lawsuits filed by plaintiff against defendants Jakob and Saltsman were the "motivating factor" behind their issuance of the misbehavior reports. In light of the conflicting evidence between the parties regarding the motivation behind the misbehavior reports, I cannot recommend dismissal of the retaliation claims against defendants Jakob and Saltsman at this juncture. To do otherwise would require the court to make credibility determinations between the conflicting evidence, which is the task of a factfinder at trial. The temporal proximity between the grievances and letters authored by plaintiff, which are in the record before the court, and the misbehavior reports issued by defendants Jakob and Saltsman, raise an inference that the misbehavior reports were motivated by plaintiff's filing of grievances. Plaintiff's letters and grievances are dated between June 27, 2009 and October 9, 2009. Dkt. Nos. 45–4 at 3, 45–5 at 5, 45–6 at 4–5, 45–7 at 8, 45–8 at 3, 45–9 at 8, 45–10 at 6. Defendants Jakob and Saltsman, on the other hand, issued misbehavior reports to plaintiff on July 3, 5, August 20, 23, September 1, and October 9, 2009. Dkt. Nos. 45–17, 45–20, 45–18, 46–2 at 18, 45–15, 45–25 at 4. Those circumstances, when considered in the light most favorable to the plaintiff, demonstrate triable issues of material fact that must be resolved before plaintiff's retaliation claims can be adjudicated. Accordingly, I recommend that defendants'

motion for summary judgment be denied with respect to the retaliation claims asserted against defendants Jakob and Saltsman.

### vii. *Plaintiff's Conspiracy Claims*

Sprinkled throughout plaintiff's complaint are allegations that defendant Jakob and others, including defendant Saltsman, conspired to violate his constitutional rights. *See, e.g., Dkt. No. 1 at 9,* 10, 26, 27. In their motion, defendants seek dismissal of this claim. *Dkt. No. 46–8 at 19–20.*

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."*Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights are not sufficient to support a cognizable claim under section 1983.*Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983).

Plaintiff's conspiracy claims are ripe for dismissal in light of the vague and conclusory allegations supporting them, and the fact that some of them relate to claims that are not cognizable under the United States Constitution. Two examples are illustrative. First, plaintiff alleges that, after plaintiff was released from one of his keeplock confinements, a fellow inmate, who had previously complained to defendant Jakob alleging that plaintiff threatened him, "laughed and joked in Duberry's face ... [,] which exhibited conspiracy by C.O. Jakob to keeplock Duberry[.]"*Dkt. No. 1 at 9.* This conclusory allegation, which is not supported by any record evidence, is insufficient to give rise to a genuine dispute of material fact regarding whether defendant Jakob conspired with anyone to violate plaintiff's constitutional rights. *See, e.g., Hilson v. Maltese,* No. 09–CV–1373, 2012 WL 6965105, at *6 n. 10 (N.D.N.Y. Dec. 14, 2012) (Baxter, M.J.), *report and recommendation adopted by*2013 WL 375489 (N.D.N.Y. Jan. 30, 2013) (Mordue, J.) ("Plaintiff's conclusory assertion ... is not sufficient to establish a material issue of fact[.]" (listing cases)). [18] Second, plaintiff alleges that, on or about July 5, 2009, defendants Jakob and Saltsman conspired "to commence the on-going harassment." *Dkt. No. 1 at 13.*Because prisoners do not have a constitutional right to be free from general harassment, plaintiff's conspiracy claim in that regard must fail. *See O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 426 (S.D.N.Y.2004) ("In the absence of

any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy [.]"); *Singer v. Fulton Cnty. Sheriff's Dep't,* No. 92–CV–1561, 1994 WL 549741, at *5 (N.D.N.Y. Oct. 4, 1994)* (Hurd, M.J .), *aff'd*63 F.3d 110 (2d Cir.1995) ("Without a [constitutional] violation, there can be no actionable conspiracy."). [19]

**\*16** Finally, because plaintiff's remaining conspiracy claims stem from constitutional claims that I recommended be dismissed earlier in this report, I recommend the accompanying conspiracy causes of action be dismissed, as well. *See, e.g., Dkt. No. 1 at 9,* 26 (alleging conspiracy to deny plaintiff access to the courts and equal protection).

For all of these reasons, I recommend that all of plaintiff's conspiracy claims be dismissed.

### viii. *Qualified Immunity*

In their motion, defendants claim entitlement to qualified immunity from suit even in the event that plaintiff's claims are not dismissed on their merits at this procedural juncture. *Dkt. No. 46–8 at 26–27.*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."*Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir.2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."*Pearson,* 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct.*Sudler,* 689 F.3d at 174 (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *abrogated on other grounds by*Pearson, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability,"*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation,"*Pearson,* 555 U.S. at 231 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir.2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue."*Nagle v. Marron,* 663 F.3d 100, 114 (2d Cir.2011) (citing *Saucier,* 533 U.S. at 194, 201, 202);*accord, Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."*Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."*Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) (citations omitted). This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of the defendant's actions]."*Malley v.. Briggs,* 475 U.S. 335, 341 (1986).

 **\*17** The legal principles applicable to First Amendment retaliation claims were well-developed at the relevant times, including when defendants Jakob and Saltsman issued the misbehavior reports that form the basis for plaintiff's retaliation claims. I am unable to conclude that reasonable persons in their positions would not have understood that the issuance of misbehavior reports, prompted by the filing of complaints and grievances against them, would not violate plaintiff's clearly established, First Amendment rights. Accordingly, I recommend that defendants Jakob and Saltsman not be granted qualified immunity from suit at this juncture with regard to plaintiff's retaliation claims.[20]

## IV. *SUMMARY AND RECOMMENDATION*

Now that discovery in this case is complete, both the plaintiff and defendants have moved for summary judgment in their favor. Plaintiff's motion is clearly deficient in that, by his own account, there are genuine issues of material fact that

must be determined at trial before a finding in his favor can be made on any of his claims. Turning to defendants' motion, I first note that, based upon plaintiff's misuse of the litigation process, including his material misrepresentations in a sworn document filed with the court and his submission of an improper response to defendants' statement of undisputed material facts, pursuant to local rule 7.1(a)(3), dismissal of his complaint is warranted on that basis. Turning to the merits, I conclude that, with the exception of his retaliation claim against defendants Jakob and Saltsman, no reasonable factfinder could find in plaintiff's favor on his various causes of action. Accordingly, it is hereby respectfully

RECOMMENDED that the plaintiff's motion for summary judgment (*Dkt. No. 37* ) be DENIED; and it is further

RECOMMENDED that plaintiff's complaint be DISMISSED in its entirety based upon his material misrepresentations to the court and abuse of the litigation process; and it is further hereby respectfully

RECOMMENDED that, if the portion of the court's report recommending dismissal based on plaintiff's misrepresentation to the court is not adopted, then defendants' motion for summary judgment (*Dkt. No. 45* ) be GRANTED in part and DENIED in part, and that all of plaintiff's claims, with the exception of his cause of action for retaliation against defendants Jakob and Saltsman, be DISMISSED on the merits.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

 **\*18** Dated: Feb. 28, 2014.

**All Citations**

Slip Copy, 2014 WL 1292225

Footnotes

1    Ordinarily, when a motion for summary judgment is made, the record before the court is construed with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). In this case, in light of the parties' cross-motions for summary judgment, the court draws "all factual inferences ... against the party whose motion is under consideration."*Tindall v. Poultney High Sch. Dist.,* 414 F.3d 281, 284 (2d Cir.2005) (quotation marks omitted).

2    The DOCCS conducts three types of inmate disciplinary hearings. *See*7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace,* 143 F.3d 653, 655 n. 1 (2d Cir.1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes,* 143 F.3d 655 n. 1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the facility's special housing unit ("SHU").*Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

3    Plaintiff requested that several witnesses be called to testify on his behalf; all of them refused to testify. *Dkt. No. 45–21 at 11–12.*Similarly, defendant McDermott offered plaintiff an opportunity to testify, but plaintiff refused. *Id.* at 12.

4    "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates."*Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995))."The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends."*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998).

5    The copy of this misbehavior report attached as Exhibit D to defendant Jakob's declaration does not include a charge for being out of place. *Dkt. No. 45–15.*Another copy of that same misbehavior report attached as Exhibit C to defendant McDermott's declaration, however, includes the out-of-place charge. *Dkt. No. 45–22 at 11.*A review of the complete disciplinary packet arising from this misbehavior report reveals that defendant Jakob did, in fact, charge plaintiff with being out of place, and defendant McDermott found plaintiff guilty of the charge. *See generally Dkt. No. 45–22.*The discrepancy between the two copies in the record has not been explained by defendants.

6    In New York, SHU cells are utilized for segregating prisoners from general population areas for various reasons including, predominantly, disciplinary purposes. *Lee v. Coughlin,* 26 F.Supp.2d 615, 618 (S.D.N.Y.1998) (citing 7 N.Y.C.R.R. §§ 253, 254 301). The conditions typically experienced by inmates confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books. *Husbands v. McClellan,* 990 F.Supp. 214, 218 (W.D.N.Y.1998) (citing 7 N.Y.C.R.R. § 304).

7    Fortuitously, plaintiff filed his complaint in this action between two periods of incarceration. Had plaintiff been an inmate when the action was commenced, it appears likely, based upon his litigation history, that he would not have qualified for IFP status in light of the three strikes provision of 28 U.S.C. § 1915(g).*See* Part III.A. of this report, *post.*

8    According to the Federal Judiciary's Public Access to Court Electronic Records ("PACER"), plaintiff has filed the following seven cases in district courts within this circuit prior to filing the case now before the court: (1) *Dolberry v. Levine,* No. 06–CV–6452, *Dkt. No. 8 at 15* (W.D.N.Y. filed Sept. 7, 2006) (dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A); (2) *Dolberry v. Levine,* No. 02–CV–6418, *Dkt. No. 368* (W.D.N.Y. filed Aug. 6, 2002) (settled for $3,300.00); (3) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–5774, *Dkt. No. 3* (S.D.N.Y. filed July 21, 1999) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e)(2)(B)); (4) *Dolberry v. Fernandez,* No. 99–CV–2235, *Dkt. No. 3* (S.D.N.Y. filed Mar. 25, 1999) (dismissed because the complaint "lack[ed] an arguable basis either in law or in fact" pursuant to 28 U.S.C. § 1915(e) (2)); (5) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–1088, Docket Entry Dated May 26, 1999 (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (6) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–1087, *Dkt. No. 5* (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (7) *Dolberry v. Fernandez,* No. 98–CV–8572, Dkt. No. 3 (S.D.N.Y. filed Dec. 4, 1998) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e) (2)(B)).

9    All unreported decisions cited to in this report have appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

10   That rule provides, in pertinent part, as follows:

(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ...

(3) the factual contentions have evidentiary support or, if specifically so identified, would likely have evidentiary support after a reasonable opportunity and further investigation or discovery[.]

Fed.R.Civ.P. 11(b).

**11** In this action, in addition to his initial disclaimer regarding his litigation history, plaintiff has persisted with the assertion that he has no litigation history, including through his denial of defendants' factual assertion, set forth in their local rule 7.1(a)(3) statement of undisputed material facts, that "Plaintiff has filed numerous actions in the United States District Courts, and is a practiced litigator." *Compare Dkt. No. 45–2 at 1 with Dkt. No. 49 at 8.* Moreover, even after filing this action, which unequivocally complains of conditions of prison confinement, plaintiff has continued to falsely represent to district courts in this circuit that he has never filed any actions related to his imprisonment. *See, e.g., Dolberry v. Martin,* No. 13–CV–1539, *Dkt. No. 1 at 2* (N.D.N.Y. filed Nov. 19, 2013) (maintaining, in his complaint, that he "has filed no other lawsuit dealing with the same facts involved in this action *or otherwise relating to his imprisonment*" (emphasis added)); *Dolberry v. Martin,* No. 13–CV–1529, *Dkt. No. 2 at 16* (N.D.N.Y. filed Nov. 19, 2013) (answering "[n]o" to the question in the verified complaint asking, "Have you ever filed any other lawsuits in any state or federal court relating to your imprisonment?").

**12** *Pennie & Edmonds LLP* specifically addressed "the applicable *mens rea* standard when a trial judge, *sua sponte,* initiates a post-trial Rule 11 sanction proceeding because a lawyer permitted a client to submit a false affidavit at an earlier stage of the litigation." *Pennie & Edmonds,* 323 F.3d at 87. District courts in this circuit have routinely held, post-*Pennie & Edmonds LLP,* however, that the holding of that case is broad enough to apply to sanction proceedings in pre-trial circumstances. *See, e.g., In re Hudson,* No. 10–CV–1352, 2011 WL 867989, at *5 n .5 (N.D.N.Y.2011) (Scullin, J.) (citing *TVT Records v. Island Def Jam Music Group,* 447 F.Supp.2d 311, 314–15 (S.D.N.Y.2006)) (finding that the "holding in *Pennie & Edmonds* is sufficiently broad to govern the ... instant case * * * where, as here, the attorney personally submitted a false or misleading filing and the court, *sua sponte,* initiated a pre-trial Rule 11 sanction proceeding"); *Castro v. Mitchell,* 727 F.Supp.2d 302, (S.D.N.Y.2010) (applying *Pennie & Edmonds LLP* when considering whether to issue *sua sponte* pre-trial sanctions); *see also Muhammad v. Walmart Stores East, L.P.,* 732 F.3d 104, 108–09 (2d Cir.2013) (reviewing a district court's imposition of pre-trial Rule 11 sanctions under the bad-faith standard set forth in *Pennie & Edmonds LLP* ).

**13** The gamesmanship demonstrated by plaintiff's false representation to the court regarding his litigation history in his action does not appear to be isolated. Three examples are illustrative. First, plaintiff has identified himself at various times as Andre Dolberry and Andre Duberry. In his most recent DOCCS incarceration at Coxsackie, plaintiff was listed as Andre Duberry, under department identification number ("DIN") 08–A–0273. Publically available records, however, reflect that he was previously confined on three separate occasions with the DOCCS under the name Andre Dolberry in 2003 (DIN 03–A–3611), 1999 (DIN 99–A–4612) and 1992 (DIN 92–R–1828). *See* http://nysdoccslookup.doccs.ny.gov (last visited on February 28, 2014). A screenshot of that website is included in this report and recommendation as Attachment A.

As a second example, the court notes that plaintiff's most recent actions filed in this district, Nos. 13–CV–1329, 13–CV–1359, assert identical causes of action (excessive force and failure to protect) against the same six defendants, one of whom is identified by name, the other five identified as "John Doe." *See generally Martin,* No. 13–CV–1529, *Dkt. No. 2;Martin,* No. 13–CV–1539, *Dkt. No. 1.*

By way of a third example, plaintiff's response, pursuant to local rule 7.1(a)(3), to defendants' statement of material facts in this action is haphazard, unsupported, and in violation of the requirements under the pertinent rule. With few exceptions, plaintiff's denials fail to cite record evidence, as required by rule 7.1(a)(3).*Dkt. No. 49 at 8–10.*His responsive statement sets forth objections without explanations. *Id.* Most notably, however, he denies certain fundamental facts that are clearly undisputed. *Id.* For example, he denies defendants' factual assertion that "[a]ll of the events alleged in the complaint occurred while plaintiff was incarcerated with the [DOCCS]."*Compare Dkt. No. 45–2 at 1 with Dkt. No. 49 at 8.* Similarly, plaintiff denies such non-controversial assertions as "all of the events alleged in the complaint occurred at the Coxsackie Correctional Facility between June and November of 2009."*Id.* Plaintiff additionally denies that the complaint in this action was filed after his release from incarceration, another seemingly non-controversial fact. *Compare Dkt. No. 45–2 at 2 with Dkt. No. 49 at 8.*

**14** A sixth disciplinary hearing is disclosed in the record, which occurred in connection with a misbehavior report issued to plaintiff by defendant Jakob on August 23, 2009. *See generally Dkt. No. 46–2.*Plaintiff, however, does not assert any causes of action arising from that hearing or against the hearing officer, Lieutenant Meigs, who is not a named defendant in this action. *See generally Dkt. No. 1.*

| Hearing Date | Type | Hearing Officer | Sanction |
|---|---|---|---|
| 7/10/09 | Tier II | Defendant McDermott | 20 days loss of packages, commissary, telephone, and recreation privileges, initially suspended but later reinstated based upon a subsequent adverse hearing determination within 60 days of that disposition |
| 7/14/09 | Tier II | Defendant McDermott | 30 day of keeplock confinement, with a corresponding loss of commissary, telephone, and package privileges |
| 9/11/09 | Tier II | Defendant McDermott | 14 days of keeplock confinement, with a corresponding loss of packages, commissary, telephone, and recreation privileges |
| 10/15/09 | Tier II | Defendant McDermott | 30 days of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges |
| 10/15/09–10/23/09 | Tier III | Defendant Gutwein | Three months of SHU confinement. [15] |

15   That determination was later reversed on appeal on procedural grounds. *See Dkt. No. 45–24* at ¶¶ *14–15* and Exh. B. As a result of that reversal, plaintiff spent only twenty-one days in SHU confinement. *See id.*Exh. C.

16   In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

17   The court recognizes that the Second Circuit has made "clear that duration [of the confinement] is not the only relevant factor."*Ortiz v. McBride,* 323 F.3d 191, 195 (2d Cir.2003). In this case, however, although plaintiff's allegations with respect to his due process claim against defendants McDermott and Gutwein are not entirely clear, I have not discerned any allegations in plaintiff's complaint suggesting that plaintiff's keeplock or SHU confinement involved constitutionally inadequate conditions of confinement. For that reason, I have analyzed only whether the duration of his confinement implicates a liberty interest.

18   Plaintiff sets forth similarly vague allegations throughout his complaint. *See, e.g., Dkt. No. 1 at 10* ("Duberry engaged in protected conduct filing grievances and civil actions which clearly involves C.O. Jakob causal connections of his conspiracy, retaliation, threats, harassments, thus other const. violations."), 27 ("Inmate Duberry was on A/3 B/3 long enough to write a ticket on Duberry, instead he waited for C.O. Jakob to come in at 3:30PM then wrote a ticket, or conspired with C.O. Jakob on the ticket by keeplocking Duberry which shows a meeting of the minds.").

19   Another example of a conspiracy claim that is based on a non-constitutionally cognizable cause of action is plaintiff's allegation that defendants Jakob and Saltsman conspired to have him relocated within the prison facility. *Dkt. No. 1 at 26.See Sheehan v. Beyer,* 51 F.3d 1170, 1174 (3d Cir.1995) ("An inmate does not have a right to be placed in the cell of his choice."); *see also Cagle v. Gravlin,* No. 09–CV–0648, 2010 WL 2088267, at *4 (N.D.N.Y. Apr. 29, 2010) (Lowe, M.J.), *report and recommendation adopted by*2010 WL 2087437 (N.D.N.Y. May 25, 2010) (Scullin, J.) ("I can find no case holding that a prisoner has a constitutional right either to the cell of his choice or to disobey a direct order.").

20   Because I have recommended dismissal of plaintiff's other causes of action elsewhere in this report, I have opted not to analyze defendants' qualified immunity argument as it relates to them.

2014 WL 411569
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michel TOLIVER, Plaintiff,

v.

Brian FISCHER, New York State Commissioner
of DOCCS; Joseph T. Smith, Superintendent
of Shawangunk Correctional Facility; W. Maly,
Deputy of Security, Shawangunk Correctional
Facility; J. Stefinik, Correction Officer, Shawangunk
Correctional Facility; J. Gardner, Lieutenant
Hearing Officer, Shawangunk Correctional
Facility; Stone, Corrections Officer, Shawangunk
Correctional Facility; Lucien J. Leclaire, Deputy
Commissioner of DOCCS; Sgt. Aube, Sgt. In House
Unit, Shawangunk Correctional Facility; Gaye (John
Doe), Corrections Officer, Shawangunk Correctional
Facility; Keys, Corrections Officer, Shawangunk
Correctional Facility; L. Pingott, Captain (Security),
Shawangunk Correctional Facility; D. Degraff,
Corrections Officer, Shawangunk Correctional
Facility; Sergeant Preston, Sergeant Corrections,
Shawangunk Correctional Facility; R. Cutler,
Corrections Officer, Shawangunk Correctional
Facility; Budziszewski Corrections Officer,
Shawangunk Correctional Facility; R. Kane,
Corrections Officer, Shawangunk Correctional
Facility; C.O. North; and J. Peterson, Defendants.

No. 9:12–CV–77 (MAD/ATB). | Feb. 3, 2014.

**Attorneys and Law Firms**

Michel Toliver, Romulus, NY, pro se.

Office of the New York, State Attorney General, Cathy Y.
Sheehan, AAG, of Counsel, Albany, NY, for Defendants.

**ORDER**

MAE A. D'AGOSTINO, District Judge.

**\*1** By his complaint in this action, Plaintiff asserts claims
for the violation of his constitutional rights arising out

of his confinement at Shawangunk Correctional Facility
("Shawangunk C.F."). Plaintiff states that he was transferred
to Shawangunk C.F. in February of 2011, and assigned to a
housing unit which was not wheelchair accessible. SeeDkt.
No. 1 at 15–17.Plaintiff was told that his wheelchair had
to be kept in a bin in a storage room and retrieved from
that location whenever Plaintiff required it to move around
the facility. See id. at 15–16.Plaintiff's repeated requests for
inmate assistance with storing and retrieving his wheelchair
were denied. See id. at 16–17.As alleged, Plaintiff was
injured on several occasions during this period when he
was attempting to store or retrieve his wheelchair. See id.
at 17–22.Throughout this period, Plaintiff filed numerous
grievances regarding the conditions of his confinement. In
addition, as many as nine misbehavior reports were issued
to Plaintiff. See id. at 22–24.Plaintiff claims that Defendants
filed false misbehavior reports against him in retaliation
for his grievance activity, denied him proper and adequate
medical care, and discriminated against him on the basis of his
disability and sexual orientation. See id. at 8. Plaintiff seeks
an award of monetary damages, as well as declaratory and
injunctive relief. See id. at 13.

On March 12, 2013, Defendants filed a motion seeking
dismissal pursuant to 28 U.S.C. § 1915 and for sanctions
pursuant to Rule 11 of the Federal Rules of Civil Procedure.
SeeDkt. No. 104.In their motion, Defendants ask the Court to
revoke Plaintiff's in forma pauperis status and conditionally
dismiss the case because Plaintiff has previously filed seven
federal actions or appeals that were dismissed in such a
manner that they should be deemed strikes for purposes
of the "three strikes" provision of the Prison Litigation
Reform Act ("PLRA").SeeDkt. No. 104–10 at 4–7.Further,
Defendants argue that this action should be dismissed because
of Plaintiff's misrepresentations in his complaint regarding his
litigation history. See id. at 8–10.

On October 29, 2013, Magistrate Judge Baxter issued a
Report–Recommendation in which he recommends that the
Court deny Defendants' motion in its entirety. SeeDkt. No.
120.Magistrate Judge Baxter first reviewed Plaintiff's lengthy
litigation history and determined that, despite having filed
more than thirty-five actions or appeals since 1992, only one
of them qualifies as a "strike" for purposes of the PLRA.
See id. at 4–8.Next, Magistrate Judge Baxter found that
Defendants' Rule 11 motion is subject to denial because they
failed to provide Plaintiff with the twenty-one day safe harbor
period required by the Rule. See id. at 10.Finally, Magistrate
Judge Baxter recommended that the Court deny the Rule 11

motion on the merits as well. *See id.* at 10–11.Specifically, the Report–Recommendation finds that Plaintiff has a far more extensive litigation history than the seven actions identified in the complaint. *See id.* at 11.Nevertheless, Magistrate Judge Baxter finds that although the standard form complaint "asks for a description of all prior lawsuits, and the court does not condone the omission, the court does not find plaintiff's failure to list all of his prior lawsuits so unreasonable as to require the imposition of sanctions."*See id.*

**\*2** Currently before the Court is Magistrate Judge Baxter's October 29, 2013 ReportRecommendation, to which neither party has objected.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011)* (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989)* (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Having carefully reviewed the October 29, 2013 Report– Recommendation, the parties' submissions and the applicable law, the Court finds that Magistrate Judge Baxter correctly determined that the Court should deny Defendants' motion in its entirety. Although Plaintiff does have an extensive litigation history, at the time he filed this lawsuit he had acquired only one strike for purposes of the PLRA. *See Toliver v. Dep't of Corrections,* No. 07–CV–3017, Dkt. No. 3 (S.D.N.Y.2007). The remaining cases Defendants cite do not qualify as strikes. Several of the cases, although filed as civil rights complaints, were treated as petitions for a writ of habeas corpus. *See*Dkt. No. 120 at 6. The Second Circuit has held that dismissal of such cases cannot constitute strikes for purposes of the PLRA. *See Jones v. Smith,* 720 F.3d 142, 147 (2d Cir.2013). Other cases cited were dismissed for Plaintiff's failure to submit a completed Prison Authorization Form and for Plaintiff's failure to comply with the filing fee requirements. *See*Dkt. No. 120 at 6–7 (citing cases). District courts in the Second Circuit have declined to find that a dismissal for failure to prosecute constitutes a strike for purposes of 28 U.S.C. § 1915(g).*See McNair v. Kelly,* No. 13 Civ. 728, 2013 WL 4574247, *1 (S.D.N.Y. Aug.22, 2013). Moreover, Magistrate Judge Baxter properly determined that a class action in which Plaintiff appears to have not given authorization for his name to appear should not be a frivolous action attributable to Plaintiff. *See*Dkt. No. 120 at 7–8.

**\*3** Finally, as to the motion for sanctions, Magistrate Judge Baxter correctly determined that Defendants failed to provide Plaintiff with the twenty-one day safe harbor period, which alone warrants denial of the motion. *See Fierro v. Gallucci,* 423 Fed. Appx. 17, 18–19 (2d Cir.2011) (finding that the district court "was required to deny plaintiffs' motion for sanctions for failure to comply with the 21–day 'safe harbor,' which requires Rule 11 motions to be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims") (citations omitted).

After carefully considering Magistrate Judge Baxter's Report–Recommendation and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's October 29, 2013 Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 104) is **DENIED;** and the Court further

**ORDERS** that Defendants shall answer or otherwise respond to Plaintiff's amended complaint (Dkt. No. 27) within **TWENTY–ONE (21) DAYS** from the filing date of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Mae A. D'Agostino, United States District Judge.

Liberally construed, plaintiff's Amended Complaint ("Am.Compl.") (Dkt. No. 27) asserts claims against a number of defendants arising out of his confinement at Shawangunk Correctional Facility. (*See generally* Am. Compl.). Plaintiff alleges that defendants filed false misbehavior reports against him in retaliation for his grievance activity, denied him adequate medical care, and discriminated against him on the basis of his disability and sexual orientation. Plaintiff seeks monetary damages as well as declaratory and injunctive relief.

Currently before the court is defendants' motion pursuant to 28 U .S.C. § 1915(g), seeking to revoke plaintiff's in forma pauperis status and conditionally dismiss the case and to dismiss the complaint as a sanction pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). (Dkt. No. 104). Plaintiff filed a response (Dkt. No. 106) to which defendants replied (Dkt. No. 107). Plaintiff then filed three supplemental affidavits (Dkt. Nos.109–111) in opposition to the motion.

Defendants argue that plaintiff has previously filed seven federal actions or appeals that were dismissed under circumstances justifying dismissal of this action under the "three strikes" provision of the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 104–10 at 4–7). Defendants further assert that the action should be dismissed based on plaintiff's misrepresentations in his complaint regarding his litigation history. (Dkt. No. 104–10 at 8–10). Having concluded that plaintiff has not acquired three "strikes" under section 1915(g), this court recommends that defendants' motion to

revoke plaintiff's in forma pauperis status and conditionally dismiss the case be denied. The court further concludes that dismissal under Rule 11 is not warranted.

### DISCUSSION

### I. Three Strikes

### A. Legal Standards

**\*4** The "three strikes" section of the PLRA prohibits the filing of an action in forma pauperis when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g). The purpose of section 1915(g) is to "stem the tide of egregiously meritless lawsuits" by "forcing the prisoner to go through the same thought process non-inmates go through before filing a suit, *i.e.* is filing this suit worth the costs?" *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

Section 1915(g) provides that:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

An action may be dismissed pursuant to section 1915(g) even if the court originally granted plaintiff in forma pauperis status. *See, e.g., Gamble v. Maynard* 9:06–CV–1543 (DNH/ DEP), 2008 WL 150364, at \*5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that in forma pauperis status was improvidently granted); *Luevano v. Clinton,* 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at \*3 (N.D.N.Y. July 1, 2010). An action is "frivolous" for purposes of the statute if it " 'lacks an arguable basis either in law or in fact.' " *Tafari,* 473 F.3d at 442 (citation omitted). In determining whether a dismissal satisfies the failure to state a claim prong of the statute, courts have drawn upon the provisions of Federal Rule of Civil

Procedure 12(b)(6) for guidance, in light of the similarity in phrasing utilized in the two provisions. *Id.* The three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the 1996 enactment of section 1915(g).*Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000).

A dismissal cannot count as a strike until after the opportunity to appeal has been exhausted or waived. *See, e.g., Partee v. Connolly,* 08 Civ. 4007, 2009 WL 1788375, at *2 (S.D.N.Y. June 23, 2009). If a district court dismisses an action on a ground specified in section 1915(g), and an appellate court simply affirms, together the decisions constitute a single strike. *Id.;Thompson v. Drug Enforcement Admin.,* 492 F.3d 428, 436–37 (D.C.Cir.2007). However, when a district court dismisses an action for any of the reasons set forth under the three strikes statute, and if the subsequent appeal is dismissed as frivolous, then the two decisions count as separate strikes.*Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010) (noting that "sequential dismissals on strike grounds can provide separate strikes under § 1915(g)").

 **\*5** If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action in forma pauperis unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed."*Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002).

**B. Analysis**
Plaintiff is a frequent litigator. Based on the court's review of his litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it appears that plaintiff has filed more than 35 actions or appeals since 1992. As Judge D'Agostino noted in her Decision and Order dated May 4, 2012, plaintiff had clearly acquired one strike for purposes of the PLRA before he filed the current action (on December 22, 2011).[1] (Dkt. No. 9 at 3). Plaintiff incurred this first strike on April 16, 2007, after filing a civil rights action in the Southern District of New York. *Toliver v. Dep't of Corrections, et al.,* 07–CV–3017, Dkt. No. 3 (S.D.N.Y.).

According to the docket entries in that action, 07–CV–3017,[2] the district court dismissed this action *sua sponte,* because it failed "to state a claim on which relief may be granted."(*Id.* at Dkt. Entry No. 3).

Defendants assert that in addition to that dismissal, plaintiff has acquired six other strikes:

 1. *Toliver v. McDonald, et al.,* 92–CV–5982 (S.D.N.Y.);

 2. *Toliver v. Fountoulakis,* et al., 07–CV–2496 (S.D.N.Y.);

 3. *Toliver v. Dep't of Corrections, et al.,* 07–CV–7672 (S.D.N.Y.);

 4. *Toliver v. New York District Attorneys, et al.,* 10–CV–7711 (S.D.N.Y.);

 5. *Toliver v. City of New York, et al.,* 10–CV–8375 (S.D.N.Y.); and

 6. *Toliver v. New York State, et al.,* 11–CV–4330 (S.D.N.Y.).

(Dkt. No. 104–10 at 5). The court finds that at the time plaintiff filed this complaint, he had not accumulated three or more "strikes" under section 1915(g) and that his action is not subject to dismissal under that provision of the PLRA.[3]

*Toliver v. McDonald,* et al., 92–CV–5982 (S.D.N.Y.) and *Toliver v. New York State, et al.,* 11–CV–4330 (S.D.N.Y.) were both apparently filed by plaintiff as actions pursuant to 42 U.S.C. § 1983, however, the court considered each to be a petition for a writ of habeas corpus. *See* 92–CV–5982, Dkt. Entry No. 2 (dismissing the complaint "which was treated as a petition for a writ of habeas corpus relief"); 11–CV–4330, Dkt. No. 4 (ordering amendment and noting that plaintiff sought no monetary damages, instead challenging his 2010 conviction), Dkt. No. 6 (dismissing the amended petition for a writ of habeas corpus as premature). The Second Circuit has held that dismissals of habeas petitions filed pursuant to sections 2254 or 2255 cannot constitute strikes for purposes of the PLRA. *Jones v. Smith,* 720 F.3d 142, 147 (2d Cir.2013) ("[D]ismissals of habeas petitions challenging the prisoner's conviction or the duration of his confinement should not be considered strikes for purposes of the PLRA."). Consequently, this court will not consider these dismissals "strikes" because they were considered by the Southern District of New York to be habeas petitions, not civil rights actions.

 **\*6** Defendants also argue that the dismissal of *Toliver v. Fountoulakis, et al.,* 07–CV–2496 (S.D.N.Y.) constitutes a strike because the docket sheet states that the complaint was dismissed pursuant to section 1915(e)(2). (Dkt. No. 104–10 at 6). However, as plaintiff correctly observes (Dkt.

No. 106 at 5), a review of the Order of Dismissal clarifies that the action was dismissed without prejudice because plaintiff failed to submit a completed Prison Authorization form. 07–CV–2496, Dkt. No. 3 at 2 (attached as Ex. A). Similarly, *Toliver v. Dep't of Corrections, et al.,* 07–CV–7672 (S.D.N.Y.) was dismissed for failure to comply with the filing fee requirements. 07–CV–7672, Dkt. No. 3 (dismissing the action following plaintiff's failure to submit an application to proceed in forma pauperis or pay the filing fee within thirty days of the court's compliance order) (attached as Ex. B). Neither was "dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted."28 U.S.C. § 1915(g). District courts in the Second Circuit have declined to find that a dismissal for failure to prosecute would be considered a strike for purposes of 28 U.S.C. § 1915(g).*See, e.g .,* *McNair v. Kelly,* No. 13 Civ. 728, 2013 WL 4574247, at *1 (S.D.N.Y. Aug.22, 2013) (finding that dismissals for failure to prosecute and procedural failures did not constitute strikes); *Toliver v. Perri,* No. 10 Civ. 3165, 2011 WL 43461, at *2–3 (S.D.N.Y. Jan. 6, 2011).

Defendants contend that plaintiff also acquired a strike when *Carrion, et al. v. City of New York, et al.,* 10–CV–8375 was dismissed. (Dkt. No. 104–10 at 7). In response, plaintiff asserts that he did not give authorization for his name to appear in this "class-action." (Dkt. No. 106 at 7). The court has reviewed the application to proceed in forma pauperis, the prisoner authorization form, and the complaint. 10–CV–8375, Dkt. Nos. 1, 2 (attached as Ex. C). There is no indication in any of these documents that plaintiff intended to be a part of that action. *See id.*The complaint identifies Toliver as a plaintiff, but is not signed by Toliver. *Id.* at Dkt. No. 2. Instead, all three documents are completed by Stephen Risi. *Id.* The factual allegations appear to be drafted by Risi and relate to Risi and Carrion, not Toliver. *Id.* Moreover, the Order of Dismissal notes that the action was brought by Risi on behalf of Carrion, and was not signed by Toliver or Carrion. *Id.,* Dkt. No. 3 (attached as Ex. D). Accordingly, the court finds that this action was not brought by plaintiff, and will not consider the dismissal a strike for purposes of section 1915(g).

*Toliver v. New York District Attorneys, et al.,* 10–CV–7711 (S .D.N.Y.) was dismissed as duplicative of another case filed by plaintiff. 10–CV–7711, Dkt. No. 3 (attached as Ex. E). In the Order of Dismissal, the Southern District of New York explained that "no useful purpose would be served by litigating this repeat filing," dismissed it as "duplicative," and directed the Clerk not to collect the filing fee. *Id.* The court

also notes that plaintiff asserts that he "personally informed the court of [his] error after realizing [he] submitted this complaint twice accidentally."(Dkt. No. 111 at 8). The court doubts that under these circumstances this dismissal could be considered a strike for purposes of section 1915(g). However, the court does not need to decide this issue because even assuming, arguendo, that it could be considered a strike, it would only be plaintiff's second.

## II. **Rule 11**

### A. Legals Standards

 **\*7** Under Rule 11, whenever a signed pleading or "other paper" is submitted to the court, the attorney or pro se litigant certifies, *inter alia,* that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay ... [and]

> (2) the factual contentions have evidentiary support ....

Fed.R.Civ.P. 11(b). In order to justify Rule 11 sanctions, it must appear that the lawyer or pro se litigant "sign[ed] a pleading, motion, or other paper for an improper purpose ... or [did] so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law ...." *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994).

To comply with Rule 11's procedural requirements, a party must make its motion for sanctions separate from other motions or requests, describe the specific conduct alleged to violate Rule 11(b), provide notice to opposing counsel, and serve the motion at least twenty-one days prior to filing the motion with the court. Fed.R.Civ.P. 11(c)(2); *see also, Langdon v. County of Columbia,* 321 F.Supp.2d 481, 484 (N.D.N.Y.2004); *Kron v. Moravia Central School Dist.,* No. 5:98–CV–1876, 2001 WL 536274, at *3 (N.D.N.Y. May 3, 2001). The twenty-one day period between notice and filing is referred to as a "safe harbor" because the opposing party may avoid sanctions by withdrawing or correcting the offending material during this period.

The imposition of sanctions is a discretionary decision. *Margo v. Weiss,* 213 F.3d 55, 64 (2d Cir.2000). That discretion should be exercised with caution, and sanctions imposed only when it is patently clear that one has engaged in improper conduct. *Cerrone v. Cahill,* 95–CV–241, 2001 WL 1217186, at *16 (N.D.N.Y. Sept.28, 2001). Whether

conduct is sanctionable is subject to a test of objective unreasonableness. *Margo,* 213 F.3d at 64–65; *see also, Binghamton Masonic Temple, Inc. v. Bares* 168 F.R.D. 121, 126–27 (N.D.N.Y.1996).

A sanction imposed under Rule 11 must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."Fed.R.Civ.P. 11(b)(4). The court must be mindful that the main thrust of Rule 11 sanctions is deterrence. *Margo,* 213 F.3d at 64–65; *Ehrich v. Binghamton City School District,* 210 F.R.D. 17 (N.D.N.Y.2002). A court has the discretion to dismiss an action with prejudice as a sanction pursuant to Rule 11, although this harsh sanction should be imposed only in extreme circumstances where the court is sure that lesser sanctions will be ineffective. *See, e.g., Safe–Strap Co., Inc. v. Koala Corp.,* 270 F.Supp.2d 407, 417–18 (S.D.N.Y.2003) (collecting cases).

## B. Analysis

Here, defendants have combined the Rule 11 motion with their motion to revoke plaintiff's in forma pauperis status and conditionally dismiss the action. They do not appear to have provided plaintiff with the twenty-one day safe harbor period. Defendants' motion for sanctions is subject to denial on this procedural basis alone.

**\*8** Turning to the merits, defendants assert that the court should dismiss plaintiff's complaint based on his "material misrepresentations" regarding his litigation history. (Dkt. No. 104–10 at 8). Generally, information about a pro se litigant's previous cases is considered material because it allows the court to determine: (1) if the issues in the case have been previously litigated and decided; (2) if plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g); (3) if plaintiff has a record of frivolous litigation sufficient to warrant a "bar order;" and (4) if plaintiff's litigation experience is so extraordinary that the court need not afford him the special solicitude normally afforded to *pro se* litigants. *Bell v. Lasacelli,* No. 08–CV–0287A, 2009 WL 1032857, at \*3 (W.D.N.Y.Apr.13, 2009) (citation omitted). [4]

In his complaint and amended complaint, plaintiff admitted that he has filed lawsuits in the past, and identified seven that were filed in 2010 and 2011. (Compl. at 9, 14; Am. Compl., at 10, 15). As noted above, plaintiff has a far more extensive litigation history than the seven actions identified in his complaint. Although the form asks for a description of all prior lawsuits, and the court does not condone the omission, the court does not find plaintiff's failure to list all of his prior lawsuits so unreasonable as to require the imposition of sanctions.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 104) be **DENIED,** and it is further

**RECOMMENDED,** that defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. No. 104) be **DENIED,** and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, the defendants be ordered to answer or otherwise respond to plaintiff's amended complaint (Dkt. No. 27) within twenty-one (21) days of the District Court's order.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

## All Citations

Slip Copy, 2014 WL 411569

### Footnotes

1    Defendants assert that the action was "commenced on January 17, 2012." (Dkt. No. 104–10 at 3). However, the complaint is dated December 22, 2011 (Dkt. No. 1 at 13), and, under the prisoner mailbox rule, the document is deemed filed on the date appearing on its face. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993).

2   The district court's order is not available in the electronic PACER system. This court may rely on the docket entries to determine whether PLRA's three strikes limitation applies, so long as they indicate "with sufficient clarity" the grounds under which the prior suit was dismissed. *Harris v. City of New York,* 607 F.3d 18, 23 (2d Cir.2010).

3   The court notes, however, that since the time he filed this action, plaintiff appears to have acquired at least three additional strikes. *See, e.g., Toliver v. City of New York, et al.,* 12–CV–0964 (S.D.N.Y.) (dismissed pursuant to 28 U.S.C. § 1915(e) (2) (B)(ii)); *Toliver v. City of New York, et al.,* 12–1855 (2d Cir.) (dismissed as lacking an arguable basis in law or fact); *Toliver v. New York City Dep't of Corrections, et al.,* 12–4992 (2d Cir.) (dismissed as lacking an arguable basis in law or fact).

4   Although defendants contend that the court granted plaintiff's in forma pauperis application based, at least in part, on plaintiff's misrepresentations (Dkt. No. 104–10 at 3), it is clear that the court undertook its own review and analysis of plaintiff's litigation history. (*See* Dkt. No. 9 at 3).

---

                                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---